CHAPMAN and another vs. THE CHICAGO AND NORTH-WESTERN RAILWAY COMPANY and others.

| 26 | 295 |
| 76 | 258 |

EVIDENCE: (1, 2.) *Admissions by one of several defendants.* (3.) *Contract purporting to be made by agent; proof of agency required.*

MEASURE OF DAMAGES: (4.) *Interest on value of property negligently destroyed.*

OBJECTIONS TO VERDICT: (5.) *Privy instructions.* (6.) *Officer not sworn.* (7.) *Jury put in sheriff's charge, left by him with deputy.* (8.) *Access of jury to judge's minutes.*

1. The admissions of a defendant, made upon the hypothesis that information given him by plaintiff was true, are admissible in evidence against him, in connection with proof of the truth of such information.

2. Where such admissions are not evidence as against *other* defendants, they should ask a special instruction to that effect.

3. A contract (oral or written) made in the name of a railroad company by D., as its general superintendent, cannot be put in evidence against the company without showing that D. was such superintendent, and as such had authority to enter into the contract.

4. In an action for the negligent destruction of plaintiff's property, it was not error (as against the defendant) to allow interest from the commencement of the action on the value of the property destroyed.

5. Where the jury come into the court and ask for additional instructions, such instructions, given in open court, cannot be regarded as a privy communication to them, merely because neither the party complaining thereof nor his attorney was present; nor is there any legal obligation upon the court to send for absent attorneys or parties under such circumstances, and delay proceedings until they appear.

6. The objection that the officer into whose charge the jury is given, is not specially sworn, must be taken at the time, or it is waived.

7. The objection that the jury, after being put into the sheriff's charge, was left by him for three hours in charge of his deputy, is not sufficient, unless it is shown that appellant was in some manner prejudiced thereby.

8. Where it appeared that the jury were allowed, during the intermission of court, to occupy the court room, and that, having accidentally got possession of the judge's minutes of the evidence, they read them, but that they were not in any way affected thereby to appellant's injury : *Held*, that the court did not err in refusing to set aside the verdict.

APPEAL from the Circuit Court for *Winnebago* County.

Action by *Chapman* and *Danforth* against the *Chicago and Northwestern Railway Company, Barron* and *Campbell,* to recover damages for lumber belonging to the plaintiffs destroyed by fire, which is alleged to have originated from sparks or coals from defendants' locomotive upon the track of the Oshkosh City Railway, in consequence of the negligent management of such locomotive by the defendants' servants. The *Chicago and Northwestern Railway Company* answered separately; first, by a general denial; and secondly, by alleging that they had nothing to do with operating the Oshkosh City Railroad, but that the cars, locomotives and employees of said defendant were used at certain hours upon said city railroad, under a special arrangement and understanding between said defendant and the defendants *Barron* and *Campbell,* by virtue of which the latter were to have the entire

control and management of said cars, etc., and were to operate, and did operate, said city railroad for their own use.

The evidence on the part of the plaintiffs tended to show that the fire originated as charged in the complaint; though no witness testified that he saw sparks or coals from the locomotive actually fall upon the lumber at the spot where the conflagration began. On the part of the defendants, the testimony tended to show that the fire did not originate from the locomotive, and that it might have been originated by sparks from one of plaintiffs' mills. *Mr. Danforth,* for the plaintiffs, testified that on the morning after the fire he conversed with the defendant *Campbell;* that the latter inquired about the origin of the fire, and witness told him what he knew and heard about it, and told him that the engine had gone up the road with the spark-catcher up. *Question:* "What did *Campbell* say?" The record states that this testimony was offered "only as to the defendants *Campbell and Barron.*" Objections on the part of the several defendants were overruled. *Answer:* "He said that if that was so, the *Railroad Company* was liable. He said it was damned carlessness; that they had a contract with the *Chicago and Northwestern Railway Company,* requiring them to run with care and prudence, the same as *Campbell and Barron* had with the city railroad. He said he should order them not to run cars on such windy days; said it was a great expense to run cars upon such a windy day."

The *Chicago and Northwestern Railway Company* moved for a nonsuit as to it. The plaintiffs' evidence had shown that the locomotive was the property of said company, and that the men who were running said locomotive were in its employ. The motion was denied. The company afterwards offered in evidence a contract between it and its co-defendants, " to contradict the evidence of *Danforth* as to conversation

between him and *Campbell.*" The conclusion of the instrument stated that the company had caused it to be executed by its general superintendent, thereto duly authorized, etc.; and it was signed "*Chicago and Northwestern Railway Company,* by GEO. L. DUNLAP, General Superintendent;" and also by the other defendants. Its introduction in evidence was objected to, on the ground, among others, that there was no proof of authority on the part of Dunlap to execute it for the company; and it was excluded. *Mr. Campbell,* as a witness for the railway company, was then asked, "Under whose care and direction were the men, engaged in operating the said locomotive on said city road?" Objected to as irrelevant, and on the ground that the liability of the parties must be determined by contract; and ruled out. The witness then testified that there was a subsequent verbal contract with Mr. Dunlap, the superintendent of the defendant company, about running said locomotive over said city railroad. Objected to as irrelevant, and because no authority had been shown in Dunlap; and ruled out.

The court instructed the jury, "In case you find the defendants or either of them liable, you will award the plaintiffs such actual or immediate damage as they suffered through the negligence of the party whom you charge, *with interest* thereon from the commencement of this suit." The other instructions need not be stated. What followed in regard to occurrences in the jury room, and the return of the jury into court before agreeing upon a verdict, will sufficiently appear from the opinion. Upon their second return, the court gave the following instruction, after writing the same out upon the judge's minutes: "You need not require the testimony of living witnesses who actually saw the fire at the time it originated, and who of their own knowledge can speak with absolute certainty as to its cause; but circumstances may be sufficient, if

they produce the conviction in your minds, as reasonable and intelligent men, that in fact it originated from the locomotive, and through the carelessness or negligence of those having it in charge."

Verdict against all the defendants. Motions on behalf of the railway company and of its co-defendants, respectively, for a new trial, not only for errors in the rulings and instructions of the court, and on the grounds that the verdict was against the law and against the evidence, but also for certain irregularities alleged to have occurred after the jury first retired and before the verdict was returned. Various affidavits and counter-affidavits were used on the hearing of the motion. The nature of the irregularities alleged will sufficiently appear from the opinion. Motion denied; and defendants appealed.

*Gabe Bouck,* for appellants:

1. After a case has been submitted to the jury, the court has no authority to communicate with them, without consent of parties, or in open court, in presence of both parties or their representatives. *Sargent v. Roberts,* 1 Pick. 337; *Comm. v. Snelling,* 15 id. 321; *Fish v. Smith,* 12 Ind. 563; *Hall v. State,* 8 id. 439; *Hogg v. The State,* 7 id. 551; *Redman v. Gulnac,* 5 Cal. 148; *Campbell v. Beckett,* 8 Ohio St. 210; *Kirk v. State,* 14 Ohio, 511; *Cook v. Green,* 1 Halst. 109; *Crabtree v. Hagenbaugh,* 23 Ill. 349; *O'Connor v. Guthrie,* 11 Iowa, 80; *State v. Pitts,* id. 343; *Davis v. Fish,* 1 C. Greene, 406; *Rogers v. Moulthrop,* 13 Wend. 274; *Benson v. Clark,* 1 Cow. 258; *Jackson v. Vrooman,* 13 Johns. 488; *Hoberg v. State,* 3 Min. 262; *Goodman v. Norton,* 5 Shep. 381. When the court re-charged the jury, either party was entitled to ask additional instructions, which the court would have been compelled to give or refuse. *Yeldell v. Shinholster,* 15 Ga. 189. The instruction was ambiguous. The defendants might ask to have it explained at the time, but could not otherwise take advantage of the ambiguity. *Sharp v. Burns,* 35 Ala.

653 ; *Warner v. Dunnaven,* 23 Ill. 380 ; *Wright v. Boynton,* 37 N. H. 9 ; *Castle v. Bullard,* 23 How. (U. S.) 172. 2. A new trial will be granted, if resort is had to indirect measures to prejudice the jury, although without the knowledge or participation of the successful party (1 Gra. & Wat. on N. T. 53) ; and so if an officer does anything calculated to prejudice the jury. *Hare's Case,* 4 How. (Miss.) 187 ; 13 Smedes & M. 500. An officer has no right to communicate with the jury. *Cole v. Swan,* 4 C. Greene (Iowa) 33. 3. The officer who takes charge of the jury should be sworn, either generally at the commencement of the term, or specially in each case. *Brucker v. The State,* 16 Wis. 336. And even if the defendants may be held to have waived this objection because their counsel was not aware of the fact and did not object at the time, still this does not authorize the sheriff to turn over the jury to his deputy. 4. It was improper for the jury to read the judge's minutes of evidence. *Neil v. Abel,* 24 Wend. 185 ; *F. & M. Bank v. Dakin,* id. 418 ; Co. Litt. 227 (b). 5. The sheriff's statement to the jury that the defendants' counsel were unwilling that they should examine the judge's minutes, was well calculated to prejudice the jury. It is not necessary to show that it *did* affect them ; but it is sufficient to show that there is reason to suspect that they were thus influenced. *Thomas v. Chapman,* 45 Barb. 98 ; *Reynolds v. Champlain Tr. Co.,* 9 How. Pr. 7 ; 1 Hill 211 ; 17 Mass. 218 ; 7 E. C. L. 433 ; 3 Brod. & Bing. 257. 6. The admission of *Danforth's* testimony as to what *Campbell* said, was error. It was merely *Campbell's* opinion, and not founded upon any facts which he knew ; and therefore was of no value as evidence even against him. But it was certainly inadmissible against his co-defendants. In actions of *tort,* the admission of one defendant is not admissible against a co-defendant. 1 Phill. Ev. 493 ; *Daniels v. Potter,* 4 C. & P. 262 ; *Metcalfe v. Conner,* Litt. Cas. 497. As to

actions founded on negligence, see 1 Phill. Ev. 211; 1 Greenl. Ev. § 176; *Benford v. Sauner,* 40 Pa. St. 9; *Buckingham v. Burgess,* 3 McLean, 549; *Dan v. Brown,* 4 Cow. 483, 492; *Rex v. Hardwick,* 11 East, 578; *Whitcomb v. Whiting,* 2 Doug. 652. 7. The court erred in instructing the jury to allow the plaintiffs *interest.* In actions of tort, interest cannot be claimed as a right, but may be given at the discretion of the jury. Sedgw. on Dam. 434, 646 (*374, *386); Opinion of SPENCER, Senator, in *Rensselaer Glass Factory v. Reid,* 5 Cow. 608; *Walrath v. Redfield,* 18 N. Y. 462; *Black v. Railroad Co.* 45 Barb. 40; *Lakeman v. Grinnel,* 5 Bosw. 625; *Anonymous,* 1 Johns. 315; *Watkinson v. Laughton,* 8 id. 213; *Amory v. McGregor,* 15 id. 29; *Richmond v. Bronson,* 5 Denio, 55; *Dox v. Dey,* 3 Wend. 360; *Green v. Garcia,* 3 La. Ann. 702; *Sargent v. Hampden,* 38 Me. 581; *McIlvaine v. Wilkins,* 12 N. H. 475; *Gilpins v. Consequa,* Peters' C. R. R. 86; *Barrow v. Real,* 9 How. (U. S.) 366; *Porter v. Munger,* 22 Vt. 191; id. 437; *McGregor v. Kilgore,* 6 Ohio, 358, 362.

*Felker & Weisbrod,* for respondents:

1. In a suit against two or more, whether sounding in tort or contract, the admissions of either defendant are competent. If a co-defendant desires to avoid the effect which such admissions may have on him, he should ask a proper instruction on that point. *Parker v. Merrill,* 6 Greenl. 41–44; *Falkner v. Leith,* 15 Ala. 9; *Johnston v. Hamberger,* 13 Wis. 175–79; *Loomis v. Loomis,* 26 Vt. 198; *Wright v. Court,* 2 C. & P. 232; *Fox v. Jackson,* 8 Barb. 555; *Irby v. Brigham,* 9 Humph. 750; 1 Greenl. Ev. § 171. 2. The defendants have waived the irregularity, if any, in placing the jury in charge of an officer who was not first sworn " according to law."*

* An affidavit of Mr. Felker, used at the hearing of the motion for a new trial, states that as the jury was leaving the box to retire to their room under charge of an officer, one of the plaintiffs' attorneys requested the court to have the officer sworn; that defendants' attorneys were present, and did not join in the request, or object to the jury retiring in charge of said officer.

38 Me. 137–141; 2 Blackf. 114; 20 Conn. 240; 12 How. Pr. 428; 20 Wis. 26. 3. Counsel and clients are bound to take notice of a regular adjournment of the court, and of the time to which it adjourns; and are bound at their peril to be there. 1 Wis. 175–183; 10 Ohio St. 258; 18 Ohio, 469–480. 4. As to the fact that the jury were not in charge of the same officer during the whole time, defendants do not show that they were in any manner prejudiced, nor do they show that they were not cognizant of the fact or did not assent to it. 20 Wis. 26; 20 Conn. 240; 12 N. H. 474; 2 Blackf. 114; 13 Conn. 445–452; 21 id. 95–101. 5. Misconduct of the officer, unless induced or countenanced by the prevailing party, is not cause for setting aside the verdict. 2 How. Pr. R. 23; 1 Park. 256; 38 Barb. 92; 29 id. 198; 2 Blackf. 114. And especially is this so when the proof shows clearly that the jury were not affected by it. 6. The judge's minutes got into the hands of the jury by accident, without the knowledge of the plaintiffs or their counsel; and the verdict should not be disturbed on that account. 3 Ind. 577; 21 Conn. 86–99; 1 Gra. & Wat. on N. T. 76; 2 id. 335 et seq.; *Tracy v. Cord*, 2 Ohio St. 431; 2 Strobh. 178; *Hall v. Rupley*, 10 Pa. St. 231.

DIXON, C. J. The admissions of the defendant *Campbell*, made by him to the plaintiff *Danforth*, and, testified to by the latter as a witness upon the stand, were not erroneously received in evidence. It is true, that they were evidence of very little weight. They were hypothetical, made on the supposition that the information he received from *Danforth* was correct with regard to the origin or cause of the fire. If that information was correct, then he admitted the fact of negligence, and that the railroad company was liable. It is to be presumed that the jury, who knew all the facts, would take the admissions for just what they were worth. If they should find the representations

of *Danforth* correct with regard to the cause of the fire, then they would consider the admissions upon the question of negligence, and it would be right that they should do so, at least as against the defendant *Campbell*. It is not necessary that admissions, to be received in evidence, should be as of facts within the knowledge of the party making them. They may be made upon information derived from others, and still be given in evidence against the party. This was so held by this court in *Shaddock v. Town of Clinton*, 22 Wis. 118, 119. The admissions were, therefore, properly received; and, if it was improper for the jury to consider them as against the other defendants, the remedy was by asking a special instruction to that effect; and, inasmuch as no such instruction was asked, the only question before us is, whether they were admissible for any purpose, or as against any of the defendants. *Bonner v. Home Ins. Co.*, 13 Wis. 686. We think, as above stated, that the evidence was admissible against the defendant *Campbell*; and, that being so, the exception must be overruled.

The alleged written contract between the defendants *Barron* and *Campbell* and the defendant railway company, was properly rejected, for the reason given at the time. There was no proof that Dunlap, by whom the contract purported to have been executed in behalf of the company, was the general superintendent as therein represented, or that, as such superintendent, he had any authority to use the name of the company, or to bind it by his signature to such a contract. And the proof offered to show a verbal agreement between the same parties, was also properly rejected on the same ground. That too, as the offer shows, was an agreement with Dunlap, whose authority to make the same or to bind the company was not shown, or offered to be shown.

The exception to the instruction that the jury should award interest from the time of the commence-

ment of the action, upon such damage as they should find the plaintiffs had sustained, must also be overruled. The damage of the plaintiff was the value of the property destroyed. That value was readily ascertained. The amount or quantity of property destroyed being shown, the value was a matter of mere computation. It was, therefore, as if the court had instructed the jury that the damages of the plaintiffs would be the value of the property destroyed, with interest from the time of the commencement of the action. In trespass, trover, or replevin for the same property, taken or converted by the defendants, such would have been the legal rule of damages; or rather, the value with interest from the time of the taking or conversion. Why should not the same rule prevail in this action? We are at a loss to assign any good reason for the distinction, if it can be said that it exists, or if it can be said to be in the discretion of the jury to give interest by way of damages in this case, whilst in the others they must give it as matter of strict legal right. We say we can see no good reason for the discrimination. The object of the rule, or of any rule of damages in any of the cases, is to give just and full compensation for losses actually sustained. It is obvious, regard being had to such compensation, which constitutes the foundation of the rule, that the giving of interest is as essential in this case as in any of the others. It is immaterial to the party who has lost his property, whether it has been taken and converted, or negligently destroyed by the other party. His loss is the same in either case, and in either case he should be entitled to the same compensation. It may be that the authorities do not fully sustain this rule. We are inclined to think they do not; and yet they do not establish the contrary. We find no case in which it has been held that such an instruction was erroneous; and the tendency of modern decisions would clearly appear to be to sustain it. At all events, we are

willing to rest our decision upon the reason or principle, which, it seems so apparent, should govern in such cases.

The next exception is as to the instruction given the jury the second time they were called in by the court and asked if they had agreed upon a verdict, or if it was probable that they could agree. The jury desired information upon the point, and the court, reducing it to writing, gave them the instruction. This was in the absence of the defendants and their counsel, and it is insisted was a privy communication. The cause was given to the jury about 9 o'clock in the morning, when they retired, and the court having continued in session until 3 o'clock in the afternoon, and the jury not then having agreed, an adjournment was had until 9 o'clock in the evening for the purpose of receiving the verdict, if any, and discharging the jury. Such adjournment of the court, and the hour to which it was adjourned, were well known to the defendants and their counsel. At 9 o'clock in the evening, the judge again took his seat upon the bench, pursuant to the adjournment, and the jury were called. Being asked if they had agreed upon a verdict, they replied that they had not; but, in answer to the question whether it was probable that they could agree, they said they thought it was, provided the instructions given them in the morning could be read again, and the testimony of one witness. The written charge was then read, but no portion of the testimony was either read or stated to them. They again retired, and at the end of about one hour were again called in by the court, when the additional instruction was given them at their request. The defendants and their counsel were absent during all this time; and the question is, whether it was a privy instruction or communication to the jury? We think not. It was a communication in open court, and in the regular form of judicial proceeding. It was in the presence and

hearing of the officers of the court and other persons then in the court room. It was a public communication, as much so as any which had theretofore taken place between the court and the jury. The only difference was, that the defendants and their counsel were not then present. And this brings up the real and only question here, which is as to whether it was the duty of the court to have sent for the defendants or their counsel before proceeding to give the additional instruction as requested by the jury. It will be remembered that the defendants and their counsel knew the hour to which the court had adjourned; and it is also proper to state that the affidavits do not charge the plaintiffs or their counsel, or any person connected with the prosecution of the case, with any fraudulent or dishonest conduct or management, by which the defendants or their counsel were kept away. Their absence may be regarded as the result of pure accident, or at most of excusable neglect. The inquiry then is: Was it the duty of the court to have dispatched a messenger for them, and to have suspended proceedings until their arrival? It is urged that this was the duty, and that it was irregular and incompetent for the court to proceed without doing so. In support of this view, the generally prevailing custom in our courts to send for attorneys and counsel under such circumstances, is cited. We know this custom or practice, and are far from wishing to discourage it. We think it a beneficial custom, and one that should be observed in all cases where the business or convenience of the court will allow it. We are sorry it was not observed in this case, though the lateness of the hour, and the fact that it was well known to the defendants and their counsel that the court was to convene at that time, may have been regarded as a good excuse. It is the constant custom of this court, whenever it is known that counsel are within reach. But, notwithstanding this custom, and our approval of it, and desire to

encourage it, we are by no means prepared to affirm as matter of law that it is the duty of the court at any time to send for absent counsel or suitors, or to await their arrival, before proceeding in causes in which they are interested. On the contrary, we think the duty, the strict obligation of law, is the very opposite. It is the duty of counsel and suitors to be present in court when their causes are moved or any proceedings taken in them; and if they are not, it is at their own risk, and not at the risk of the other party, if the court sees fit not to notify them. The rights of the other party will not be affected, nor the proceedings set aside, on account of such mere omission. The giving of the notice is a matter of grace or favor on the part of the court, and not of legal obligation or duty. The court may proceed without it, subject to the power of opening the proceedings where sufficient cause of absence is shown, and it appears that injustice has been done. The idea that the court cannot proceed without causing the notice to be given, or that it is error to do so, and that it must await the motion and presence of counsel or their clients, would be intolerable; for then no business could be done and no proceedings taken except by the favor of counsel or of litigants. Such is clearly not the law; and there was no error here in the omission or neglect of the court to send for the defendants or their counsel, under the circumstances disclosed by the bill of exceptions and the affidavits.

With respect to the authorities cited to show that the additional instruction was a privy communication, or in the nature of one, made by the court to the jury, we deem it unnecessary to make any special comments. In none of the cases where the communication was condemned or held irregular for that reason, was it a proceeding in open court, as here, except the case in 5 Cal. 148, where the practice is regulated by statute, and the giving of further instructions in the absence of parties or their counsel is positively pro-

hibited. In *Campbell v. Beckett*, 8 Ohio St. 210, a case strongly relied upon by counsel for the defendants, the further instruction was given during *a recess of the court,* and in the absence of both parties and their counsel.

The objection that the sheriff, who took charge of the jury when they withdrew to consider the case, was not specially sworn, was waived by the silence of the parties. It is just one of those objections which should have been promptly raised at the time, as it might then have been obviated, but which, not having been so raised, is deemed to have been voluntarily relinquished by the parties, and their assent to the proceeding is presumed. The books are full of such cases, and the following are some among those to be found in the reports of this state: 1 Wis. 401; 13 id. 339, 673; 17 id. 687; 20 id. 540; 14 id. 258; 18 id. 633; 21 id. 632.

And the further objection, that the jury were for the space of three hours left by the sheriff in the charge of one of his deputies, who was not specially sworn, must also be overruled. It does not appear that the defendants were in any manner prejudiced by the proceeding, conceding it to have been irregular. On the contrary, it conclusively appears that they were not. The deputy makes oath that he kept the jury locked in their room during the whole of such time; that no person or persons whatever had any communication with them; and that he did not speak a single word to them himself. And as to the report claimed to have been made by the sheriff upon his return, after being sent out by the jury to procure the minutes of the testimony,* it seems very clear

---

* The affidavits of several jurors represent the sheriff as reporting that the " defendants' counsel " objected to their being permitted to examine the minutes. Affidavits of other jurors, used for the plaintiffs, represent the sheriff as merely reporting that " the judge would not let the minutes and charge come in, as part of the counsel objected."                    REP.

to us that there was nothing in it so calculated to injure the defendants or prejudice the minds of the jury against them or their counsel, as to authorize the setting aside of the verdict on that ground. It is very doubtful, from the affidavits, whether the sheriff did report as the defendants' counsel claims; but if he did, it is very clear from all the facts and circumstances, that it had no such effect as is supposed, or as some of the jurors were led to suppose. No juror deposes that it had any effect upon him, and several depose that it had no influence whatever over them. The jury remained unchanged for several hours after, and in fact until the further instruction was given at the session of the court late in the evening.

Still another and the last objection, we believe, is to the reading of the minutes of the testimony by some of the jurors. Weary of their confinement in a small room, for the greater part of the day, the jurors requested the sheriff to give them the use of the court-room, which was much larger and then unoccupied; and the sheriff did so. We see nothing particularly wrong in this. In fact we believe it is quite common, where jurors are out, and the court is not in session, to allow them to occupy the court-room, where they can be more easy and comfortable, or walk about if they desire to do so. But whilst the jury were in the court-room, some of them, without the knowledge of the officer, went to the judge's desk, obtained his minutes of the evidence, and read them, or a part of them. It is not shown that the vote or verdict of any juror was in any way influenced by such reading. Those who read or heard the reading, depose that they were not influenced by it. The affidavits establish beyond any doubt that such reading was not with the knowledge or consent, or by the procurement, of any of the parties, or their attorneys or counsel, or any person interested in the action. It

was an accident, resulting from the sheriff's letting the jury into the court-room, a thing which was lawful and proper enough in itself. The rule of law in such case is correctly stated in *Ball v. Carley*, 3 Ind. 577, where it was held that if the minutes got before the jury by accident, and did not influence their verdict, the verdict would not be set aside.

*By the Court.*—Judgment affirmed.