YINGLING and others, Respondents, v. TIC and another, Appellants.

APPLETON STATE BANK, Administrator *de bonis non,* Respondent, v. SAME, Appellants.*

*April 4—May 1, 1962.*

---

* Motion for rehearing denied, with $25 costs, on June 29, 1962, WILKIE, J., taking no part.

475

476

For the appellants there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, for Ward Tic and Mutual Service Casualty Insurance Company, and by *Douglas D. Winter* of Shawano, for Ward Tic personally, and oral argument by *Mr. Fred N. Trowbridge* and *Mr. Winter.*

For the respondents there was a brief by *McCarty & Burns* of Kaukauna, for Yingling, and by *McKenzie & Robertson* of Appleton, for Appleton State Bank, administrator *de bonis non,* and oral argument by *Neil J. McCarty* and *Thomas B. McKenzie.*

FAIRCHILD, J. 1. *Yingling's speed.* Defendant Tic contends that as he requested, a question should have been submitted as to Yingling's negligence with respect to speed. The verdict was given May 24, 1961, before our amendment of sec. 270.27, Stats., became effective, authorizing submission of one question as to negligence without subdivision.

The accident occurred in daylight and the speed limit was 65 miles per hour; the pavement was about 20 feet wide, blacktopped. Photographs show cracks and irregularity in the surface, somewhat irregular edges, and the shoulder, referred to as being one foot in width, appears grassy, not clearly defined, and sloping off into the ditch. The parties had come around a curve to their left shortly before the accident.

It appears to be conceded that Tic was traveling 40–45 miles per hour. Yingling testified that he had followed Tic for one half to three quarters of a mile at this speed and was going 50 miles per hour as he overtook and started to

pass. Arthur Tic, who noticed Yingling approaching from the rear, testified that Yingling was going at least 50 miles per hour at the curve and was going 70 miles per hour as he passed. Ward Tic first saw the Yingling car out of the window at his left and estimated its speed at 70. He testified that when the Yingling car hit the trees, the rear end went three feet up in the air and at that time it was 200 feet ahead of Tic. This would mean that the Yingling car had gone nearly 400 feet while Tic was traveling about 200. Yingling testified that after his left wheels left the pavement, he was so jolted around in the car that he was unable to apply his brakes and he also was unable to steer it out of the ditch and onto the pavement. Some distance before reaching the trees, the car crossed a rock ledge which was exposed in the ditch. One tree was nine feet from the pavement and the other closer.

In our opinion there was evidence upon which the jury could have found that Yingling exceeded 65 miles per hour in overtaking and passing Tic. The excess speed would have increased the momentum, the difficulty of controlling the car, and the force of the impact upon collision. It would have been a cause of the collision and the injuries,[1] but not of the original deviation from the pavement.

In the light of this evidence, it was probably error, in line with past decisions, not to submit a question as to Yingling's negligence with respect to speed although speed and management and control are more than ordinarily interwoven under the facts of this case.

We do not reverse a judgment, however, unless it appears pretty clearly that without the error the result might probably have been more favorable to the complaining party.[2]

[1] See *Jewell v. Schmidt* (1957), 1 Wis. (2d) 241, 83 N. W. (2d) 487.

[2] Sec. 274.37, Stats.; *Holtz v. Fogarty* (1955), 270 Wis. 647, 650, 72 N. W. (2d) 411.

In the case before us it appears that Yingling accelerated his car in order to pass, and it is claimed that the speed limit was exceeded in that process. Whatever Yingling's rate of speed, it was a physical cause of his inability to keep or regain control of his car after it left the pavement. The greater the speed, the greater the difficulty. If his speed was excessive, it added to the extent of the excess, a degree of difficulty in keeping or regaining control which should not have been present. Even if excessive, however, it had nothing to do with his swerving to the left when passing Tic. That was due either to Tic's sudden invasion of the left-hand lane, or to some inattention on the part of Yingling. The jury found that it was due to Tic's invasion.

There is little to show any particular thing that Yingling was able to do, after his wheels were off the pavement, but which he failed to do. It would be largely speculation to say that he should have been able to give way to Tic without getting his left wheels off the road, or to stop his car or steer it back onto the pavement.

The court instructed the jury that it was Yingling's duty to exercise ordinary care to keep his car under proper control. The greater the speed, the less the control. Although we do not approve this method of submitting the question of negligent speed as an element of negligent control, we think it apparent here that the jury must have so considered it. If the jury had felt that Yingling's speed was reasonable and that his sole negligence lay in failure to control his car better after Tic deviated, it is doubtful that the jury would have ascribed so substantial a percentage to such negligence. The court had instructed on the emergency doctrine. We consider that the jury's present findings reflect a conclusion that Yingling's speed was excessive and impaired his ability to avoid collision.

2. *Damages.* Defendant does not challenge the amount of damages awarded to Mr. Yingling or his daughter Kath-

erine. Defendant contends, however, that the damages awarded to the other two children and to Mrs. Yingling's estate for her pain and suffering are excessive.

*$4,000 damages awarded to Carol.* Carol was seven years old at the time of the accident. She had many bruises and suffered from shock. The attending doctor described her as being in acute distress. Her nose was broken; her right arm was broken in two places, the humerus or upper arm and just above the wrist; and she had a laceration over the bridge of the nose requiring three sutures and resulting in a one-centimeter scar. She wore a cumbersome cast on her arm for five weeks, termed a hanging cast, apparently made heavy so as to apply traction at the site of the upper fracture. The humerus healed satisfactorily except for a half-inch overriding of the bones at the site. The nose healed with the septum in a deviated position interfering with the passage of air and this difficulty is exaggerated whenever there is nasal congestion. An operation will probably be required to correct the deviation but because of the growth of the bone, this surgery would not be performed until Carol is fourteen or fifteen. The doctor considered the surgery major. The expense of it is not material here because presumably included in an award of future medical expense to Mr. Yingling. There is also a flattening over the bridge of the nose which the doctor referred to as a defect in appearance.

*$1,500 damages awarded Timothy.* Timothy was three years old. After the accident he appeared to be in acute distress and mild shock. The tibia in his left leg was broken. A cast was applied, extending from the toes up to the mid-thigh with the knee held at 35 degrees flexion. The cast was removed August 3, 1959. The attending physician testified that there was considerable pain and discomfort as a result of the fracture, and mental anxiety; that one would expect discomfort up to the removal of the cast and that

after the cast was removed there was a certain amount of atrophy of muscles as a result of the disuse. Timothy had a good recovery, but it required some period of time for the muscles to regain their function and strength through use.

*$3,000 awarded for Mrs. Yingling's pain and suffering.* Mrs. Yingling survived the accident by seventy-two hours. She had fractures of nine ribs, a punctured lung, and a fractured hip. There was testimony tending to show that she was conscious forty-two of the seventy-two hours and experienced severe pain. Breathing was painful. She indicated fear of pain when anyone approached to touch her or the bed. She could not be moved to be X-rayed, and portable equipment was brought to her bed. The doctors did administer narcotics to relieve pain but avoided doing so unless absolutely necessary. Because of her depressed respiration and possible head injury, it was deemed risky to give drugs having a depressing effect.

The circuit court reviewed the damage awards, but found no basis for judicial interference with them. Our review leads us to the same conclusion.

*By the Court.*—Judgments affirmed.