FISHER, Plaintiff and Appellant, v. GIBB and others, Defendants: BOTHUM and others, Defendants and Respondents.*

*October 28—November 24, 1964.*

* Motion for rehearing denied, with costs, on February 2, 1965.

For the appellant there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Clayton R. Hahn* and *Donald R. Peterson* of counsel, all of Milwaukee, and oral argument by *Mr. Hahn* and *Mr. Peterson.*

For the respondents Robert E. Bothum and Allstate Insurance Company there was a brief by *Kivett & Kasdorf,* attorneys, and *A. W. Kivett* of counsel, all of Milwaukee, and oral argument by *A. W. Kivett.*

For the respondent International Harvester Company there was a brief by *Prosser, Zimmermann & Wiedabach* of Milwaukee, and oral argument by *Frederick H. Prosser.*

FAIRCHILD, J.   Plaintiff concedes that the record contains credible evidence to sustain the finding that Bothum was not negligent. On this appeal she makes only three claims: (1) It was error to refuse to allow plaintiff to read into evidence a portion of Bothum's testimony upon adverse examination before trial; (2) Bothum was, as a matter of law, the agent of International Harvester; (3) it was error to exclude certain evidence on the agency question. As we are of the opinion that the exclusion of the offered evidence on the negligence issue was not prejudicial, we need not reach the latter two claims.

1. *If the exclusion of portions of Bothum's deposition was error, was it prejudicial?* The Gibb car was traveling

about 45 miles per hour, and was maintaining the same interval between it and the other westbound cars. Bothum estimated his speed at 35 to 40 miles per hour. There was evidence from which the jury might find that Miss Gibb negligently permitted the right wheels of her car to get off the pavement and that in turning back, her car went into a skid and crossed over upon the eastbound lane. The evidence also amply supported a finding that the Gibb car went onto and across the eastbound lane so short a distance ahead of Bothum that he could do nothing to avoid a collision. Apparently the jury so found.

In order to establish Bothum's negligence under the circumstances, it would be necessary for plaintiff to persuade the jury that when the Gibb car invaded the eastbound lane there was a sufficient interval of space and time so that Bothum could be held responsible for failure to take effective action.

Miss Gibb testified that, while skidding, her car was going down the highway at a 45-degree angle; that after she skidded out, when she first saw the Bothum car, there were perhaps 100 feet between them; that the impact occurred almost immediately after the front end of her automobile crossed into the other lane.

Mr. Blanke, the driver of the second car behind the Gibbs, testified that the collision occurred almost instantly after the Gibb car entered the eastbound lane. Mrs. Blanke saw the rear of the Gibb vehicle slide on the right shoulder and kick up snow and gravel. After it changed its direction to southwesterly she closed her eyes.

Mr. Bothum testified that the Gibb car was about 50 feet ahead of his car when it first came into his lane.

The testimony which placed the two cars farthest apart when the Gibb car entered the eastbound lane was that of Mr. Gibb. He was seated in the back seat and looked up as the Gibb car was starting to move toward the eastbound

lane; he felt they were in a skid; he then first saw the Bothum car, and thought it was somewhere near 300 feet away. At 40 miles per hour, Bothum would travel 50 feet in less than one second, 100 feet in less than two seconds, 300 feet in five seconds.

Before pleading, plaintiff had examined Bothum pursuant to sec. 326.12, Stats. Plaintiff's counsel attempted to read three portions of the deposition which could be interpreted to mean that Bothum thought that ten to fifteen seconds elapsed from the time the Gibb car turned into the eastbound lane until the impact occurred. On page 27 of the deposition Bothum said he had seen the Gibb car "as it turned out to pass." On page 31 he said that when he first saw it, it was "turning out to pass." On page 41 these questions and answers appeared:

"'Q. How much time elapsed between when you first saw the Gibb vehicle and the actual impact? A. Just very brief, sir.

"'Q. Well, as much as ten seconds? A. I would imagine about that, sir.

"'Q. Could it be as much as fifteen? A. Well, say ten to fifteen.

"'Q. When did you next observe the Gibb vehicle? A. As I was coming out of a daze after being knocked out.

"'Q. So then you only made one observation of the Gibbs' vehicle and that was when it was beginning to pass, is that right? A. Right.

"'Q. So you don't know if it swerved or anything like that? A. No, it just came out to pass.'"

Counsel for the Gibbs objected to the reading, asserting that the "turning out to pass" was a conclusion. Counsel for International Harvester objected because it had not been a party at the time the deposition was taken.

At the trial Bothum testified that he saw the line of westbound cars coming around a gradual curve when there were about 2,000 feet between him and them; that from the

first time he saw the Gibb car come across to his side of the highway until the collision was "just briefly, a second;" that, "It was ten seconds from the first—or, ten to fifteen from the first that I observed the car until it came on up; but when it pulled out to pass, of course, it was just a brief second;" that he first saw the Gibb car as it was coming around the curve in the line of cars.

The difference between Bothum's testimony at trial and the portions of his earlier deposition was that at trial he testified to having first seen the Gibb car as one of a line of westbound cars 2,000 feet from him (17 seconds assuming a combined speed of 80 miles per hour) and having seen the Gibb car enter his lane at about 50 feet from him (less than one second) while in his deposition he said at one point that he first saw the Gibb car as it entered his lane ("turned out to pass") and at another point said that he first saw the Gibb car ten to fifteen seconds before the collision (600 to 900 feet away if only Bothum's speed be considered; 1,200 to 1,800 feet away if a combined speed of 80 miles per hour be assumed). Yet all the other testimony indicated that the Gibb car suddenly entered the eastbound lane at an angle, with only a very short distance left between it and the Bothum car and only a very short interval of time before the collision. It seems highly probable that Bothum did not mean in his deposition to say that the Gibb car entered his lane ten to fifteen seconds before the impact, and that the jury would not have so interpreted the deposition in the face of all the other testimony. We conclude accordingly that if the offered portions of the deposition had been received it is highly improbable that the verdict would have been more favorable to plaintiff. Thus if the exclusion of these portions was error, we do not deem it prejudicial.[1]

[1] *Holtz v. Fogarty* (1955), 270 Wis. 647, 650, 72 N. W. (2d) 411; *Carson v. Pape* (1961), 15 Wis. (2d) 300, 307, 112 N. W. (2d) 693; *Yingling v. Tic* (1962), 16 Wis. (2d) 474, 477, 114 N. W. (2d) 815.

The record does not clearly show whether or not counsel for Gibb and his insurer may have waived their objection to the offered portions of the deposition by failure to object at the time it was taken.[2] Assuming, however, that the objections of both Gibb and International Harvester were valid, the court could have received those portions, and given an instruction that those portions were to be considered only as against Bothum.[3]

2. *Plaintiff's right to offer the deposition.* A deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness.[4] Respondents, Bothum and his insurer, contend that the offered portions of the deposition did not contradict or impeach Bothum's testimony at trial. The circuit court apparently agreed. As is evident from the foregoing discussion, we consider that the offered portions of the deposition were open to an interpretation inconsistent with Bothum's testimony at trial. Accordingly plaintiff had a right under sec. 326.12 (7) (a), Stats., to introduce these portions as against Bothum.

Furthermore, in excluding the offered portions of the deposition, the circuit court appears to have concluded that sec. 326.12 (7) (b), Stats., does not authorize a party to offer a deposition of an adverse party if the deposing party is present at the trial. The parties have argued this question, and we deem it important to decide it.

Sec. 326.12 (5), Stats. 1959, provided:

*"Use of deposition.* Such portions of any such deposition as are relevant to the issues may be offered by the party taking the same, and shall be received when so offered upon

---

[2] Sec. 326.12 (5) (b), Stats.
[3] McCormick, Evidence (hornbook series), p. 136, sec. 59; *Johnston v. Hamburger* (1860), 13 Wis. 195 (*175); *Chapman v. Chicago & N. W. R. Co.* (1870), 26 Wis. 295, 303.
[4] Sec. 326.12 (7) (a), Stats.

the trial of action or proceeding in which it is taken, notwithstanding the deponent may be present."

If that statute were still in force, there could be no question of plaintiff's right to have any relevant portion of Bothum's deposition received in evidence even though Bothum was in court.

Ch. 113, Laws of 1961, repealed sec. 326.07, Stats., and repealed and re-created sec. 326.12. Prior to that time sec. 326.12 had authorized the taking of depositions only of an adverse party or a person standing in one of several specified relationships to an adverse party. Authority to take depositions of other possible witnesses was limited to the situations specified in sec. 326.07. New sec. 326.12 permitted any party to take the deposition of any person and the portion of the section authorizing the use of depositions was necessarily redrafted. Obviously many persons could be examined under new sec. 326.12 who could not have been examined under the old section.

Sec. 326.12 (7), Stats., authorizes the use of any part or all of a deposition, so far as admissible under the rules of evidence, in accordance with any one of three provisions, (a), (b) or (c). Par. (a) authorizes any party to use any deposition to contradict or impeach the testimony of the deponent as a witness. Par. (c) authorizes any party to use the deposition of a witness, whether or not a party, if certain conditions are fulfilled, generally having to do with availability of the witness. Par. (b), however, corresponds generally to sec. 326.12 (5), Stats. 1959, dealing with the use by one party of the deposition of an adverse party or of a person standing in a specified relationship to an adverse party where the latter is a corporation, partnership, or association. Sec. 326.12 (7) (b), Stats., provides:

"The deposition of a party or of any one who at the time of taking the deposition, or at the time of the occurrence of

the facts made the subject of the examination, was an officer, director, agent or employe of a public or private corporation, partnership, or association which is a party, may be used by an adverse party for any purpose, subject to the limitations prescribed in s. 325.27, relating to admissions by members of corporations."

Obviously the phrase "notwithstanding the deponent may be present," which appeared in sec. 326.12 (5), Stats. 1959, does not appear in present sec. 326.12 (7) (b). There has been substantial redrafting of the statutory language, however, and we find no implication from the mere absence of this phrase that a deposition which would otherwise be admissible under sub. (b) is not admissible if the deponent be present.

We have reviewed the history of former sec. 326.12, Stats., and of the enactment of present sec. 326.12 by ch. 113, Laws of 1961.

The first statutory provisions allowing an adverse examination of a party before trial appeared as secs. 54 and 55 of ch. 137, R. S. 1858. Sec. 54 provided that a party could be "examined as a witness" at the instance of an adverse party; sec. 55 provided that the examination "may be read by either party on the trial."

The statute was revised and became sec. 4096, R. S. 1878. As revised, the statute made no mention of the use of the deposition at the trial. This court in 1887, however, had no difficulty in deciding that the party taking the deposition of an adverse party was entitled to have it received in evidence at the trial notwithstanding the presence of the deponent.[5] The court noted:

". . . The examination of a party is in the nature of an admission so far as his answers are material to the issues in the action, and such admissions are always admitted as original evidence against him."

[5] *Meier v. Paulus* (1887), 70 Wis. 165, 171, 35 N. W. 301.

The same rule was followed by the court in later cases.[6]

The statute was amended in 1882 so as to allow an adverse examination of an officer or managing agent of a corporate party.[7]  By ch. 244, Laws of 1901, the scope was extended to include assignees, agents and employees of a party, and agents and employees of a corporate party or who were so at the time the facts giving rise to the cause of action occurred. The court held that the statute made an officer of a corporation "in effect *a party,* so that his examination becomes independent evidence in the case, notwithstanding his presence in court. . . ."[8]  However, it was held that an employee was a witness and not a party, and that the deposition of an employee could not be read if the employee were present in court.[9]  It is clear that the court considered the examinations of a party or an officer of a party admissible under general rules of evidence governing admissions of a party.

By ch. 246, Laws of 1913, the following sentence was added to the statute:

"Such portions of any such examination or examinations of any of the persons mentioned as are relevant to the issues in the case may be offered by the party taking any such examination or examinations and shall be received upon the trial of the action or proceeding in which it is taken, notwithstanding the person who was so examined may be present at the trial or proceeding."

[6] See *Wunderlich v. Palatine Fire Ins. Co.* (1899), 104 Wis. 382, 385, 80 N. W. 467; *Gutzman v. Clancy* (1902), 114 Wis. 589, 595, 90 N. W. 1081.

[7] Ch. 194, Laws of 1882.

[8] *Johnson v. St. Paul & Western Coal Co.* (1906), 126 Wis. 492, 503, 105 N. W. 1048. And see *J. H. Clark Co. v. Rice* (1906), 127 Wis. 451, 106 N. W. 231.

[9] *Hughes v. Chicago, St. P., M. & O. R. Co.* (1904), 122 Wis. 258, 271, 99 N. W. 897; *Anderson v. Chicago Brass Co.* (1906), 127 Wis. 273, 283, 106 N. W. 1077; *Zoesch v. Flambeau Paper Co.* (1908), 134 Wis. 270, 280, 114 N. W. 485.

In *Thomas v. Lockwood Oil Co.*[10] the court noted that prior to the 1913 amendment, a party could not have used the deposition of the employee of an adverse party where the deponent was available as a witness. The court stated that the 1913 amendment evidently was for the purpose of changing that rule.

Cases decided after the 1913 amendment continued to refer to the *Meier Case* and to the proposition that the adverse examination of a party is in the nature of an admission.[11] The statute was revised in 1927,[12] and sub. 5 appeared in the form it retained until ch. 113, Laws of 1961.

It thus appears that the admissibility of the deposition of a party when offered by an adverse party was not dependent upon the phrase, inserted in 1913, "notwithstanding the person who was so examined may be present. . . ."

Bill No. 597, S., 1959 session, and a similar Bill No. 294, A., 1961 session, were sponsored by the Milwaukee Junior Bar Association. Bill No. 597, S., 1959 session, was not enacted, but Bill No. 294, A., 1961 session, became ch. 113, Laws of 1961. The drafting records of the legislative reference library contain an explanatory statement regarding Bill No. 597, S., 1959 session. Although the statement lists ten objectives, none of them indicates a purpose to prevent the use at trial of a deposition of an adverse party when the latter is present.

We conclude that the absence from sec. 326.12 (7) (b), Stats., of the phrase "notwithstanding the deponent may be present" is without significance. Any portion of the deposition of a party relevant to the controversy is to be received

[10] (1921), 174 Wis. 486, 497, 182 N. W. 841.
[11] *Lange v. Heckel* (1920), 171 Wis. 59, 69, 175 N. W. 788; *Leslie v. Knudson* (1931), 205 Wis. 517, 520, 238 N. W. 397; *Estate of Shinoe* (1933), 212 Wis. 481, 486, 250 N. W. 505; *Frawley v. Kittel* (1949), 254 Wis. 432, 436, 37 N. W. (2d) 57.
[12] Ch. 523, sec. 49, Laws of 1927.

as an admission when offered in evidence by a party adverse to the deponent. It was error to exclude the portions of Bothum's deposition offered by plaintiff, although, as heretofore stated, the error is not deemed prejudicial under the circumstances.

*By the Court.*—Judgment affirmed.