SCHOENAUER, Appellant, v. WENDINGER and another, Respondents.

*No. 152. Argued November 3, 1970.—Decided January 8, 1971.*
(Also reported in 182 N. W. 2d 441.)

418

For the appellant there was a brief by *Giffin, Simarski, Goodrich & Brennan,* attorneys, and *Edward J. Simarski* and *Charles W. Collins* of counsel, all of Milwaukee, and oral argument by *Edward J. Simarski.*

For the respondents there was a brief by *Kivett & Kasdorf,* attorneys, and *Nonald J. Lewis* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis.*

WILKIE, J. This appeal raises two questions on the liability phase of this controversy (the damage aspects of the case are not involved on this appeal) :

1. Did the trial court err in admitting the deposition testimony of Stanley Brodnicki?

2. Did the trial court err in the instructions given to the jury on the issue of right-of-way?

*No proper foundation laid for receipt of deposition.*

On October 2, 1967, defendant took the deposition of Stanley Brodnicki, pursuant to sec. 887.27, Stats. The reasons therefor were in compliance with this section in that at the time the deposition was taken Brodnicki was alleged to be in ill health. The parties were notified, and plaintiff's counsel was present and cross-examined the witness.

This deposition was offered at trial and plaintiff objected on the ground that no foundation for its admission had been laid, *i.e.,* there was no showing that the

witness was unavailable to testify in person at the trial.[1] After considerable discussion the trial court admitted the deposition, stating:

"Now, the statutory section 887.27 does not condition the use of a deposition for the purpose of perpetuating the testimony upon the continuation of the circumstances which justify it, *nor does it provide that the conditions of age, infirmity, and ill health exist at the time of the trial in order to justify the use of the deposition.* So, I will permit the deposition to be read." (Emphasis added.)

This was error.

Sec. 887.27 (5), Stats., provides:

"(5) DEPOSITION, WHEN USED. The deposition or a certified copy of such record thereof may be used in any action or proceeding between the person at whose request it was taken and the persons named in the said written statement, or any of them, who were notified as aforesaid, or any person claiming under either of the said parties concerning the title, claim or interest set forth in the statement, *in the same manner and subject to the same conditions and objections as if it had been originally taken for said action or proceeding.*" (Emphasis added.)

Thus, sec. 887.27 clearly contemplates some restrictions on the use at trial of depositions even though taken for purposes of "perpetuating the testimony." The statute further states that these conditions are the same as those applicable to depositions "originally taken for said action or proceeding."

As to depositions taken for the action or proceeding, such depositions are governed by sec. 887.12, Stats., which provides:

"887.12 **Depositions; purpose, procedure, scope, use, effect and related matters.** (1) WHEN DEPOSITIONS MAY BE TAKEN. *In any civil action or proceeding,* any party may examine any person, including a party, by deposition

---

[1] 26A C. J. S., *Depositions,* p. 437, sec. 92 (1).

upon oral examination at any time before final determination thereof, for the purposes of discovery or *for use as evidence in the action or for both purposes."* (Emphasis added.)

The statute provides how and under what circumstances the deposition may be used. Those portions which are pertinent here provide:

"(7) USE OF DEPOSITIONS. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in accordance with any one of the following provisions:

". . .

"(c) The deposition of a witness, whether or not a party, may be used by any party for any purpose *if the court finds:*

". . .

"3. That the witness is dead or is so sick, infirm or aged as to make it probable that he will not be able to attend at the trial or hearing of the action, proceeding or matter in which his testimony is desired;

". . .

"6. Upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow some portion or all of the deposition to be used."

It is conceded that the original purpose for taking the deposition pursuant to sec. 887.27, Stats., was that the witness, Stanley Brodnicki, was severely ill, and there was danger that he might not survive to the time of the trial. Therefore, we conclude that sec. 887.12 (7) (c) 3 applies, and governed the use of this deposition at this trial under this provision, "if the court finds . . . [t]hat the witness is . . . so sick, infirm or aged as to make it probable *that he will not be able to attend at the trial."* (Emphasis added.) Here the trial court made no find-

ing that the witness was not able to attend the trial because of illness, and determined it was not necessary to do so. There was no attempt made by the defendants to lay this foundation. Further, there was no showing and the trial court made no determination that reading the deposition was necessary "in the interest of justice" under "exceptional circumstances" as required by sub. (7) (c) 6.

In view of the express language of the statute, we find no merit in respondents' contention that while they are required to make a showing of (in this case) the illness of the witness at the time the deposition is taken pursuant to sec. 887.27, Stats., the law does not "require a similar showing at the time of the trial by the person desiring to offer the testimony [at trial]."

Respondents rely on *Thayer v. Gallup* [2] wherein the court allowed the reading of the deposition of an adverse party, even though he was present in court at the time of the trial. The deposition was originally taken pursuant to a statute permitting the taking of a deposition when the witness resided more than 30 miles from the place of trial,[3] and the statutes also provided the deposition could be used if the reason for taking it still existed.[4] The court held that, despite the fact the witness (in this case the adverse party) was present at the trial, the reason for taking the deposition still existed, the witness still lived more than 30 miles away. The court noted that it might have been better to have the witness testify orally, but that it was within the discretion of the trial court whether to admit the deposition.[5]

---

[2] (1861), 13 Wis. 603 (*539).

[3] Ch. 137, sec. 8, R. S. 1858.

[4] Ch. 137, sec. 19, R. S. 1858.

[5] Sec. 887.12 (7) (c) 6., Stats., seems to provide for the trial court's discretion in "exceptional circumstances" to admit the deposition "in the interest of justice," but even then "with due regard to the importance of presenting the testimony of witnesses orally in open court."

*Thayer* does not apply to this case for two reasons:

*First, Thayer* was interpreting a different statute, one which has been changed many times.[6] Even so, the statute there involved required that the reason for taking the deposition still existed; and it specifically held that the section prohibiting the use of the deposition if the conditions were different did not apply.[7] The present statute also requires such a showing, but *none was made here.*

*Second,* the deposition involved in *Thayer* was that of an adverse *party,* and, while this court has held that even under the present statutes the deposition of an *adverse party* may be read at trial, even though he is present at trial,[8] Brodnicki was merely a witness in this case, not a party.

The in-person testimony of witnesses is to be encouraged. The opportunity for the jury and court to assess the testimony of each witness, reflecting on his demeanor and his conduct under cross-examination, is ample reason why in-person testimony is to be preferred. The taking of depositions is necessary on occasion and their use permitted, but only after the court makes a finding that one of the conditions for their use has been satisfied. We find error here in the trial court's admission of the Brodnicki deposition into evidence without a proper foundation having been laid for its use.

*Erroneous instruction regarding right-of-way.*

Two conflicting versions of the accident emerged from the testimony: (1) Plaintiff crossed the street on a "Walk" light at a normal pace and defendant's automobile struck her after she had proceeded three or four steps off the curb and in the marked crosswalk;

6 *See Fisher v. Gibb* (1964), 25 Wis. 2d 600, 131 N. W. 2d 382.

7 *Thayer v. Gallup, supra,* footnote 2, at page 604 (*541).

8 *See Fisher v. Gibb, supra,* footnote 6.

(2) plaintiff hurried across the street on a "Don't Walk" light to catch a bus on the southeast corner of the intersection and did so after defendant had started his turn west on an amber light; plaintiff struck defendant's automobile on its right side after jumping a little snowbank at the north edge of the street and proceeding a pace or two on the crosswalk.

The case was submitted to a jury on a special verdict and no question is raised here on the jury's finding of negligence as to lookout on the part of both the plaintiff and defendant. As to negligence on failing to yield the right-of-way, the trial court asked in its special verdict as to the negligence of each in this regard and gave the following instruction:

"Questions Nos. 1 (a) and 3 (a) inquire with respect to whether the defendant, Albert Wendinger, or the plaintiff, Norma Schoenauer, was negligent with respect to right-of-way. Under the law, both parties cannot have the right-of-way. Either the plaintiff or the defendant had the right-of-way. It is for you to determine under the evidence of this case and by applying these instructions.

"You are instructed that the Wisconsin Statutes define right-of-way as 'the privilege of the immediate use of the roadway.'

"The statutes further provide that 'a pedestrian facing a "walk" signal may proceed across the roadway in the direction of the signal and shall be given the right-of-way by the operators of all vehicles.' However, the statutes further provide that no pedestrian shall suddenly leave a curb and walk or run into the path of a vehicle which is so close that it is difficult for the operator of the vehicle to yield. Thus, a pedestrian does not have the right-of-way if he suddenly steps from the curb into the path of a vehicle which is so close that it is difficult for the driver to yield.

"You must determine whether Norma Schoenauer was crossing the highway on a 'walk' or a 'don't walk' signal. If you find that she was crossing the highway on a 'don't walk' signal, then Albert Wendinger did not have a duty to yield the right-of-way, and Norma Schoenauer

had the duty to yield the right-of-way to the vehicle of Albert Wendinger.

"If you find that Norma Schoenauer was crossing the highway on a 'walk' signal, then you must also determine whether she did or did not leave the curb and ran into the path of the approaching automobile driven by Albert Wendinger when it was so close that it was difficult for the operator to yield the right-of-way. If you find that the pedestrian, Norma Schoenauer, did so walk, then the driver of the automobile, Albert Wendinger, did not have a duty to yield the right-of-way; but if you find that the pedestrian did not so walk, then it became the duty of the driver of the automobile, Albert Wendinger, to yield the right-of-way to Norma Schoenauer."

This instruction was objected to by the plaintiff and she repeated her objection in her motion for a new trial and has done so again on this appeal.

Appellant urges this instruction was prejudicial error because (1) the court improperly combined sec. 346.23 (1), Stats., dealing with controlled intersections, and sec. 346.24 (2), dealing with uncontrolled intersections; (2) the instruction implied a shifting of right-of-way; (3) the instruction confused right-of-way with lookout; and (4) the instruction generally confused the jury as to the law.

The principal error in the instruction is the statement by the trial court that the pedestrian lost her right-of-way (and the defendant therefore had no duty to yield) if the jury believed that even though she faced a "Walk" light she suddenly left the curb and either walked or ran into the path of the vehicle which was so close that it was difficult for the operator to yield. This conduct by the plaintiff, if the jury believed the evidence established this, would be negligent conduct on her part, but it would not dissipate her right-of-way.[9]

[9] *See Landrey v. United Services Automobile Asso.*, ante, p. 150, 181 N. W. 2d 407, in which a pedestrian with "Walk" light waited and signaled to right-turning car behind him and to the left to

In discussing the instruction, the trial court stated in effect that since secs. 346.23 to 346.30, Stats., were headed "Respective Rights and Duties of Drivers and Pedestrians," sub. (2) of sec. 346.24 was equally applicable to sec. 346.23, and that the caption on sec. 346.24, "Crossing at uncontrolled intersection or crosswalk" had no bearing on the matter.[10]

Sec. 346.23 (1), Stats., provides:

"**Crossing controlled intersection or crosswalk.** (1) At an intersection or crosswalk where traffic is controlled by traffic control signals or by a traffic officer, the operator of a vehicle shall yield the right of way to a pedestrian crossing or who has started to cross the highway on a green or 'WALK' signal and in all other cases pedestrians shall yield the right of way to vehicles lawfully proceeding directly ahead on a green signal. The rules stated in this subsection are modified at intersections or crosswalks on divided highways or highways provided with safety zones in the manner and to the extent stated in sub. (2)."

Sec. 346.24 (1) and (2), Stats., provides:

"**Crossing at uncontrolled intersection or crosswalk.** (1) At an intersection or crosswalk where traffic is not controlled by traffic control signals or by a traffic officer, the operator of a vehicle shall yield the right of way to a pedestrian who is crossing the highway within a marked or unmarked crosswalk.

"(2) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is difficult for the operator of the vehicle to yield."

Thus, the rules for pedestrian right-of-way are different in secs. 346.23 and 346.24, Stats.[11] In order for the motorist to have a duty to yield under sec. 346.24, the

complete its right turn over the crosswalk and then stepped into the car.

[10] *See Hoeft v. Milwaukee & Suburban Transport Corp.* (1969), 42 Wis. 2d 699, 708, 168 N. W. 2d 134.

[11] *Id.* at page 709.

pedestrian must be "crossing" within the crosswalk (sec. 346.24 (1)), and not have entered in such a manner as to make it difficult for the motorist to yield (sec. 346.24 (2)). The requirements under sec. 346.23, however, are that the pedestrian be "crossing" or have *"started to cross"* on a "Walk" light. The burden on the motorist is more absolute under sec. 346.23 than under sec. 346.24.

While the instruction dealing with stepping off a curb into the path of a car is found under sub. (2) of sec. 346.24, Stats., this language is not found under sec. 346.23. This indicates an intention to make this requirement applicable to those situations only.[12]

The committee notes to the revision of sec. 346.24, Stats., in 1957,[13] indicate that these provisions apply to uncontrolled intersections.[14] The meaning of these two sections must stand on their own words; they make the driver's duty to yield more stringent under sec. 346.23 (1), if not indeed absolute.

The only factual issue to be decided on the question of right-of-way in a case such as this is whether the plaintiff was "crossing" or "had started to cross" on a "Walk" signal. If so, the defendant had a duty to yield; if not, the defendant had no duty to yield. The instruction as given was confusing.

We also believe there is merit to appellant's further contention that the instruction implies the right-of-way may be shifted from the pedestrian to the motorist. Right-of-way is wholly statutory and cannot be transferred.[15]

---

[12] ". . . While the placement in the statutes is not controlling, it is of some significance in determining legislative intent." *Huebner v. State* (1967), 33 Wis. 2d 505, 513, 147 N. W. 2d 646.

[13] Ch. 260, sec. 1, Laws of 1957.

[14] Committee Notes, 40 W. S. A., p. 376, sec. 346.24.

[15] *Brunette v. Dade* (1964), 25 Wis. 2d 617, 131 N. W. 2d 340.

In the case of two motorists, the one having the right-of-way may forfeit this right-of-way by negligent speed. ". . . When such negligence is found on the part of the right-hand driver, neither he nor the left-hand driver has a right superior to the other in entering the uncontrolled intersection." [16] In short, neither party has the right-of-way, since the only one having it has forfeited it.

While one having the right-of-way is not relieved from the duty of due care, especially the duty of lookout,[17] there is no authority for the proposition that one loses the right-of-way because of negligent lookout; undoubtedly because lookout is not relevant to right-of-way, whereas speed is. Similarly, a pedestrian having the statutory right-of-way is not relieved of the duty of due care, or of lookout. If a pedestrian is guilty of negligent lookout he does not thereby forfeit his right-of-way, if indeed he has the right-of-way. On the other hand, a pedestrian crossing at an uncontrolled intersection can forfeit his right-of-way by stepping suddenly into the path of an approaching car.[18] However, even in this situation, the right-of-way would not transfer to the motorist. The situation would merely be that neither "has a right superior to the other." [19] As to the pedestrian facing a "Walk" light at a controlled intersection, if he starts to cross the crosswalk while the "Walk" light is still on, but leaves the curb suddenly stepping into the path of a vehicle at such time as it would be difficult for the motor vehicle operator to yield, the pedestrian does not forfeit his right-of-way.

We think the dignity attached to a pedestrian's position once he is crossing or has started to cross with a

[16] *Pagel v. Kees* (1964), 23 Wis. 2d 462, 467, 127 N. W. 2d 816.

[17] *Schmit v. Sekach* (1966), 29 Wis. 2d 281, 288, 139 N. W. 2d 88.

[18] Sec. 346.24 (2), Stats.

[19] *Pagel v. Kees, supra,* footnote 16.

"Walk" light at a crosswalk at a controlled intersection is not unlike that of a driver lawfully proceeding directly ahead on an arterial highway. In the instant case the jury may well have believed that the plaintiff pedestrian was crossing or had started to enter the crosswalk at this controlled intersection while the "Walk" light was on. The error in the instruction is that the jury was told that the driver could not be negligent in failing to yield the right-of-way to plaintiff-pedestrian, even if the jury believed that the plaintiff had started to cross the crosswalk while the "Walk" light was on and at a time when it was difficult for the defendant-operator to yield the right-of-way.

There is no doubt that the erroneous instruction was prejudicial, since the jury excused the defendant from any negligence with respect to right-of-way while finding the plaintiff negligent in this regard. The jurors were undoubtedly misled by the instruction and it undoubtedly affected their apportionment of negligence.[20]

Because of the prejudicial errors we must reverse and order a new trial.

*By the Court.*—Judgment reversed, and cause remanded with directions to conduct further proceedings not inconsistent with this opinion.

[20] *Menge v. State Farm Mut. Automobile Ins. Co.* (1969), 41 Wis. 2d 578, 164 N. W. 2d 495.