HELLECKSON, Special Administrator, Appellant, v.
LOISELLE and another, Respondents.

*November 28—December 29, 1967.*

For the appellant there were briefs and oral argument by *Robert Dewa* of Madison.

For the respondents there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner.*

BEILFUSS, J. There are two issues presented:

(1) Was the $500 awarded by the jury for conscious pain and suffering so inadequate as to require a new trial on the issue of damages?

(2) Was the plaintiff more than 10 percent contributorily negligent as a matter of law?

In a very recent opinion, *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 83, 152 N. W. 2d 911, this court set forth the procedure it would follow in cases where it is claimed that damages for personal injury are excessive. There is no reason why the same should not apply where damages are claimed to be inadequate. The court, in *Bach,* said:

". . . Because the trial judge has the advantage of personal observation of the witnesses, particularly the plaintiff, his decisions on the excessiveness of a verdict have great weight on review. Because of the heavy reliance placed by this court on the trial court's view of the damages, this court has declared that when a verdict is found to be excessive by the trial court, the trial court 'should state its reasons for its determination.' Where the trial court determines that the jury verdict is not excessive, we have recommended that the trial court state its reasons for so ruling.

"In the instant case the trial court did not file a detailed memorandum but stated that the award, although at the 'upper limits of damages' was 'not out of reason.' Because of the absence of an analysis by the trial court, this court on appeal must 'review the entire record as a matter of first impression and ascertain whether, in its judgment, the verdict is excessive.' "

In the case at bar the only analysis of the evidence was in the court's oral statement from the bench. After reviewing the damage rules, the trial court stated:

"Now, in the case at bar, our view was and is that the amount awarded by the jury was low but not out of bounds; that in other cases of a similar nature that we have had, the jury has made findings which would award something more in the way of pain and suffering. . . .

"Among the things that the jury could very well have taken into consideration is the fact that the plaintiff here was under sedation in the hospital and under drugs; also, that a good deal of the suffering that he incurred was the result of matters unrelated to the accident, as

ably argued by counsel for the defendant here; and in addition that, under all the circumstances of the case, including time involved of roughly seven days, more or less, that the amount awarded was a fair amount."

While the oral statement of the trial court is somewhat more complete than the memorandum in *Bach, supra,* it is not sufficient to constitute the "analysis" of the damage evidence we contemplated in that opinion.

"Because of the absence of an analysis by the trial court, this court on appeal must 'review the entire record as a matter of first impression and ascertain whether, in its judgment, the verdict is . . . [inadequate].' " [1] However, the standard this court must apply in its review is "that where there is any credible evidence which under any reasonable view supports the jury finding, especially when the verdict has the approval of the trial court, it should not be disturbed." [2] Also, in reviewing the evidence to determine whether the damages are inadequate we must view the evidence in the light most favorable to the defendant. [3]

The record indicates that plaintiff did suffer considerably during the six and one-half days preceding his death. The evidence concerning Noltner's injuries, pain and suffering, was as follows:

Dr. Arthur Stiennon, a radiologist who treated Noltner, testified that his pubic bones were fractured into "multiple fragments" and that the central portion of the pelvis was completely fractured in four places. He further testified that the left sacroiliac joint was fractured, and that Noltner's stomach was grossly distended due to shock. There was gas in his colon and his bladder floor was elevated due probably to local hemorrhaging from the fractures. Noltner's small bowel was distended which

---

[1] *Bach, supra,* page 83.

[2] *Bach, supra,* page 82.

[3] *McLaughlin v. Chicago, M., St. P. & P. R. R.* (1966), 31 Wis. 2d 378, 143 N. W. 2d 32.

the doctor testified indicated that control of the bowel was impaired.

Dr. Richard Graf, a urologist who treated Noltner shortly after the accident, testified he noticed lacerations of the scalp and elbow; a marked tenderness over both kidney areas and over the pubic bone. Dr. Graf stated that Noltner could not eliminate urine and that the drainage from the catheter was bloody. Dr. Graf took X rays but had difficulty because Noltner was in pain and discomfort. He further testified that some of Noltner's internal organs were damaged and that he was alert and conscious when he attended him.

Dr. Bauman, the pathologist who conducted an autopsy on the plaintiff's body, confirmed the above injuries.

Miss Mary Klahr, one of the nurses who attended Noltner during his hospitalization, testified that on the night of the accident his abdomen was very distended and that he was nauseated and vomiting; that he was complaining of pain and very restless and that a physician was called "because he had so much pain." Miss Klahr further testified as to the daily nursing reports made by nurses attending him. These notes indicate that Noltner had pain and discomfort throughout his period of hospitalization. The reports also indicate that he slept from time to time.

Palmer Helleckson, a relative of Noltner, testified that he was a generally healthy man who enjoyed walking and led a socially active life. Helleckson saw Noltner at the hospital two days after the accident and stated that he had a wooden splint on one leg and needles in the arm; that his face was "scarred up;" that he had a gash in his head; and that he was perspiring profusely. He testified that Noltner recognized him and that during his one and one-half hour stay they talked about Helleckson's children by name. Helleckson said that Noltner would "shrivel up his face and twist his mouth" and complained that he was "burning up inside."

The evidence adduced favorably to the defendants reveals that Noltner's medical history shows that he was suffering from a number of preexisting ailments. In 1964, Noltner was hospitalized and treated for pneumonia, asthma, and diabetes. Further, there is evidence that he had chest pains and a serious heart condition, and had been hospitalized for this condition in 1964. In addition, he was suffering from a preexisting disease in the hip, referred to as degenerative arthritis. There was further testimony as to hearing loss in one ear and some eye difficulty.

In *Wheeler v. Milner* (1908), 137 Wis. 26, 118 N. W. 187, this court held that testimony concerning preexisting physical condition was proper on the issue of pain and suffering because it tended to show that a plaintiff's suffering might not be entirely due to the defendant's negligent conduct. If the issue does not involve a claim of aggravation of preexisting conditions, recovery should be based only on the pain and suffering resulting from the defendant's tortious conduct. *See* Ghiardi, *Personal Injury Damages* (1964), sec. 5.06.

There is also further mitigating evidence in the record. It is clear that Noltner was given codeine and demerol to alleviate and diminish his pain. Also tranquilizers were administered. However, the testimony indicates that Noltner's pain could not be substantially alleviated by drugs because he could not take them in sufficient quantities due to his age and physical condition. The fact that pain is diminished or deadened by the use of drugs is a proper and relevant consideration. *Wasicek v. M. Carpenter Baking Co.* (1923), 179 Wis. 274, 191 N. W. 503.

The general rule in measuring pain and suffering is reviewed by Professor James D. Ghiardi in his book, *Personal Injury Damages* (1964), p. 72, sec. 5.06:

"There is no standard by which conscious pain and suffering may be measured and compensated for in

money. The rule is stated in 25 CJS, Damages, p 641, Sec 93:

" 'There is no standard by which physical pain and suffering may be measured and compensated for in money. It can only be said that an award of damages therefor should be estimated in a fair and reasonable manner, and not by any sentimental or fanciful standard, and should constitute a reasonable compensation to plaintiff on the facts disclosed by the evidence. The jury are entitled to consider the length of plaintiff's suffering, the nature of the injury, the age, health, habits, and pursuits of plaintiff.'

"This rule was approved in the case of Parr v. Douglas, 253 Wis 311, 323, 34 NW2d 229 (1948). The amount to be awarded rests largely in the discretion of the jury, and with their verdict the courts are reluctant to interfere.

"In Wasicek v. M. Carpenter Baking Co., 179 Wis 274, 278, 191 NW 503 (1923), the court said: 'There is no accurate scale by which either court or jury can determine damages for pain and suffering. They must, however, exercise their judgment and discretion.' Compensation for pain and suffering is hard to measure and must rest in the discretion of the jury, guided by common sense. Butts v. Ward, 227 Wis 387, 279 NW 6 (1938)."

Significant factors the jury should consider in evaluating pain and suffering if they appear in the evidence are, (1) the duration of the conscious suffering, (2) prior health, (3) whether sedatives and other drugs were used to relieve pain and whether they were effective, and (4) whether some pain was attributable to pre-existing physical disorders and, if so, whether this condition was aggravated by the incident in question.[4]

Viewing this evidence in the light most favorable to the defendants, we are of the opinion that the jury award for pain and suffering in the amount of $500 was grossly inadequate. It appears without dispute that

[4] *See* Ghiardi, *Personal Injury Damages in Wisconsin*, Wisconsin Continuing Legal Education Journal, 1964.

Noltner received multiple and severe injuries, and suffered severe continuous conscious pain and distress until his death six and one-half days after the accident. The evidence does not reveal that drugs administered relieved his pain in any significant degree. Noltner did have several preexisting physical infirmities which were not normal but not unusual for a man seventy-three years old. However, a thorough review of all the evidence, the testimony and the exhibits, including the medical evidence, does not reveal these infirmities caused him any pain immediately prior to the accident, nor that any of these preexisting conditions in any way contributed to his pain or suffering after the accident, with the possible exception of the last two days before his death because of his heart condition.

Pursuant to the *Powers* rule [5] and its adaptation in *Parchia v. Parchia* (1964), 24 Wis. 2d 659, 669, 670, 130 N. W. 2d 205, we conclude the jury's award of $500 for pain and suffering is grossly inadequate but not perverse or the result of prejudice nor error in the trial. We further conclude from all the facts in the record that $1,000 is a reasonable award for pain and suffering and that an option of a new trial on the issue of damages or an additur [6] to the judgment should be extended to the defendants.

The defendants' petition for review asks that we determine as a matter of law that the causal negligence of Noltner be found to be 50 percent and that the action be dismissed or, in the alternative, that the defendants be granted a new trial solely on the issue of negligence. Without a detailed discussion of the evidence and without hesitation, we conclude that there is ample credible evidence in the record to sustain the jury's finding at-

[5] *Powers v. Allstate Ins. Co.* (1960), 10 Wis. 2d 78, 102 N. W. 2d 393.

[6] An additional $500 less the 10 percent comparative negligence reduction.

tributing 90 percent of the negligence to the defendant, Gary Loiselle, and 10 percent to Noltner.

Even though the conditions at the scene of the accident [7] indicated that defendants' opportunity for visible observation of plaintiff was limited, plaintiff had the right-of-way, being a pedestrian crossing within a crosswalk at an uncontrolled intersection. Sec. 346.24 (1), Stats. It is true that this court said in *Hintz v. Mielke* (1961), 15 Wis. 2d 258, 263, 112 N. W. 2d 720, that the pedestrian does not have the right-of-way if he suddenly steps from the curb into the path of a vehicle which is so close that it is difficult for the driver to yield. (*See also* sec. 346.24 (2).) [8] However, there is absolutely nothing in the record to support the conclusion that plaintiff was proceeding across the street in such a manner. All indications are to the contrary. Plaintiff had nearly reached the curb on the opposite side of the street when he was hit. This is clearly not the case where one steps unexpectedly from the curb into the face of an oncoming car.

The question with respect to Noltner's negligence was a question of fact for the jury and the findings are supported by the evidence and the inferences properly to be drawn therefrom. *Hintz v. Mielke, supra,* page 264.

*By the Court.*—Judgment reversed, and new trial granted upon issue of damages, but with an option to the defendants to permit judgment to be entered against them in the amount of $2,713.73, together with costs,

---

[7] Defendant, Gary Loiselle, was traveling at a reasonable rate of speed comparable to that of the other cars traveling on Johnson street. There was a large row of trees on the south side of Johnson street and there was also a parked car located on the south side of Johnson street. Also, there was a car traveling in the right lane of the street.

[8] "No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is difficult for the operator of the vehicle to yield."

notice of the election of the option, if exercised, to be filed with the clerk of this court within twenty days from the date of the announcement of this decision.

WILKIE, J., took no part.