SCHUELER and another, Appellants, v. CITY OF MADISON and others, Respondents.*

*Nos. 139, 237. Argued November 4, 1970.—Decided February 5, 1971.*

(Also reported in 183 N. W. 2d 116.)

[1] *Lock v. State* (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183.

* Motion for rehearing denied, with costs, on March 30, 1971.

For the appellants there were briefs by *Arthur, Tomlinson & Gillman* of Madison, and oral argument by *Bruce Gillman*.

For the respondent city of Madison there were briefs by *Edwin Conrad*, city attorney, and *Robert T. Semrad*, principal assistant city attorney, and oral argument by *Mr. Semrad*.

For the respondent Madison Bus Company there were briefs by *Petersen, Axley, Brynelson & Herrick* of Madison, and for the respondent Transit Casualty Company by *Stafford, Rosenbaum, Rieser & Hansen* of Madison, and oral argument by *Eugene O. Gehl* and *Willard S. Stafford*, both of Madison.

HEFFERNAN, J. A careful perusal of the 1158 page transcript of this case convinces us that the verdict and judgment should be set aside and a new trial ordered in

the interest of justice. Not all the errors that occurred during the course of trial are prejudicial in themselves, and some proceedings that occurred during trial that we conceive to be error were not objected to; but, in the aggregate, we conclude that the totality of several errors so infected the proceedings as to prejudicially affect the plaintiffs and to require a new trial.

*Was it error to have refused plaintiffs' request to call the city's special investigator adversely*

The plaintiffs called Sergeant Traver of the Madison police department as its first witness and asked to call him as an adverse witness under sec. 885.14 (1), Stats., which provides:

"Any party . . . or his or its . . . employe . . . may be examined upon the trial as if under cross-examination, at the instance of any adverse party."

It is clear that, under the plain meaning of the statute, Sergeant Traver was an employee of the city, a party-defendant adverse to the plaintiffs. The trial judge ruled, however, that the statute was not applicable. He stated that the negligence claimed against the city referred to that of the department of traffic engineering, a function with which the police officer had nothing to do. He said the fact that another branch of the city was involved would not affect the testimony of the officer—that "he is clearly not an adverse witness insofar as how the accident happened." Later he referred to the officer as "an independent witness."

In the trial judge's opinion following motions after verdict, he stated, "Sergeant Traver offered no testimony which had any bearing on the city's liability in this lawsuit." We cannot agree with this rationale. It appears that, at the point of the trial when this decision was made, the judge attempted to separate the liability of the city from that of the bus company. He reasoned

that, because the testimony of the officer was ostensibly relevant only to the collision of the bus and the pedestrian, no interest of the city adverse to the plaintiffs was thereby involved. However, where two defendants are sued in a single tort action, the amount of negligence attributed to the plaintiff is inseparably of concern to each of the defendants. We do not agree with the trial judge's reasoning, for the testimony of Sergeant Traver tended to show that the plaintiff was negligent as to lookout, and, though the negligence thus revealed was initially significant in regard to the liability of the bus company, it was equally significant in regard to the liability of the city. Under our comparative negligence law, any negligence attributable to the plaintiff redounds to the benefit of all the defendants, since a plaintiff cannot recover from any defendant unless he is less negligent than that defendant. Any negligence that Sergeant Traver could attribute to Donna Schueler was of direct benefit to his employer, the city of Madison.

The statute is one relating to testimonial bias. It is a legislative public-policy declaration that a witness can be expected to have some loyalty to his employer and, hence, to have interests contrary to his employer's legal adversaries. There is no room in the terminology of the statute for the conclusion that "expertise" of the witness should permit a court to ignore its plain and unequivocal meaning.

We also conclude that the trial court compounded its error by stating in the presence of the jury that the police officer was "an independent witness." This tended to give the same credence to the police officer that we would expect to be afforded a traffic officer in the ordinary case where the city was not a party.

That the officer was not a witness unconnected with any concern for the city's liability is evinced by the clear implication of the record that photographs and statements of witnesses in possession of the officer had been withheld from the plaintiffs and were "sprung" on trial.

While the trial judge correctly pointed out that he would have ordered the city to produce the pictures if a proper pretrial request were made, the significance of the point is that the police witness withheld information that would most likely not have been withheld if the city were a stranger to the lawsuit.

In addition, the refusal to let plaintiffs' counsel call the officer as an adverse witness resulted in disrupting any orderly procedure in the presentation of the plaintiffs' case. Ordinarily, when a party is called adversely, the examination permitted following the adverse examination is limited to "matters tending to explain or qualify testimony" of witnesses given on cross-examination (sec. 885.14, Stats.). *O'Day v. Meyers* (1911), 147 Wis. 549, 133 N. W. 605; *Guse v. Power & Mining Machinery Co.* (1912), 151 Wis. 400, 139 N. W. 195.

In the instant case, however, the judge's erroneous ruling opened the door for the full weight of the defense position to be brought in at the very beginning of the trial—before the plaintiffs' case had really commenced. A full reading of the transcript leads to the conclusion that, from the time Sergeant Traver, who was really the principal witness for the defense, was permitted the unlimited right to testify, the defense had the initiative in the lawsuit, and all opportunity of an orderly presentation of the plaintiffs' case was gone. What should have been an affirmative presentation of the plaintiffs' case degenerated into a rebuttal. The right of the plaintiffs to open their case was violated.

A trial judge in the exercise of properly expressed discretion may, of course, permit the alteration of the usual order of proof. But the record must clearly show that the judge was conscious of the implications of his action and show he exercised discretion on a legally recognized basis.

In the instant case defendants were given a substantial advantage when the questioning of Sergeant Traver permitted the opening of the defendants' case at the be-

ginning of the trial. McCormick, *Evidence* (hornbook series), p. 6, fn. 1, sec. 4, points out that the "right to open and close" is a right that is related to the plaintiff's burden of proof. In the instant case, the defendants were, in effect, given the right to present a major portion of their case at the commencement of testimony, but the plaintiffs remained saddled with the burden of affirmative proof. *See also:* 6 Wigmore, *Evidence* (3d ed.), pp. 494–498, sec. 1866.

Plaintiffs' attorney questioned Sergeant Traver only in regard to physical facts that were apparent at the scene of the accident. However, the attorney for the Madison Bus Company immediately began questioning the officer about information secured from witnesses during the course of his investigation.

Upon plaintiffs' attorney's objection to questions substantially beyond the scope of plaintiffs' questions, the trial judge made the surprising statement that the officer was "an independent witness" and ruled that the defendant bus company could treat the witness as its own. The bus company's attorney then proceeded to develop the defense case. It is little wonder that defense counsel twice in the space of a single page of transcript stated that he was "delighted" with this procedure.

Plaintiffs' attorney had a full and unlimited opportunity to re-examine this police witness, but the record read as a whole indicates that the prejudice that arose from the disruption of the orderly presentation of plaintiffs' case was beyond rectification.

We do not consider this special statutory procedure under sec. 885.14, Stats., the equivalent of the usual testimonial proceedings, in respect to which we have recently adopted the wide-open rule of *cross*-examination, which permits the cross-examining lawyer to bring out points relevant to his own case. We did, however, in *Boller v. Cofrances* (1969), 42 Wis. 2d 170, 166 N. W. 2d 129, make it clear that one of the criteria to be examined in permitting wide-open cross-examination was the de-

gree to which it disrupted the orderly presentation of the evidence. *Boller, supra,* page 181. Here, it is apparent that no such criterion was applied or considered when the judge suddenly ruled that the officer was available for full *direct* examination by the defendants, and as an independent witness.

The refusal to permit plaintiffs to call Sergeant Traver adversely is inextricably linked with an additional error in regard to the testimony of the same witness.

When the bus company's attorney examined the police officer, he asked what questions were asked the plaintiff Donna Schueler in the emergency room of the hospital and what answers were given. The officer stated that she said:

"She had been crossing University Avenue, from the north side to the south side, and that she had forgotten about the bus lane and that she had not stopped for the median strip . . . and was in the process of stepping into the bus lane when she struck the left side of the bus."

This statement of Donna Schueler, as recounted by the officer, is the sole evidence of any admission by Donna Schueler that she had any knowledge of the movement of the buses contrary to the flow of ordinary vehicular traffic in the opposite direction. Its admission was highly significant, for it established, arguably at least, that she knew of the hazard of the buses and was aware of her duty to keep a lookout for buses coming from the west. The statement of Donna Schueler recited by Sergeant Traver was almost the whole of the defendants' case.

Under the provisions of the statutes, the statement was prima facie inadmissible. Sec. 885.28 (1), Stats., provides:

"In actions for damages caused by personal injury, no statement made or writing signed by the injured person within 72 hours of the time the injury happened or acci-

dent occurred, shall be received in evidence unless such evidence would be admissible as part of the res gestae."

This testimony was not objected to. However, counsel has no duty to object when, from the course of the proceedings, the point at issue is one on which the judge has just ruled adversely. The law does not require counsel to perform a useless act or to make a futile objection.

Trial counsel stated on motions after verdict that he made no objection because the court had just ruled, over counsel's objection, that the officer was impartial and was an independent investigator. He asserted that his objection to the judge's refusal to permit him to call the officer adversely sufficiently raises the question of the police officer's right as an impartial witness to take a statement within seventy-two hours. The trial judge said on motions after verdict:

"Counsel now say that it would have been pointless to object to such testimony after the Court had ruled that Officer Traver was not an adverse witness insofar as how the accident happened. Perhaps this is correct, and undoubtedly we would have permitted Officer Traver to testify as to what the plaintiff had told him about the accident even though there had been a specific objection at the time."

Since the issue was almost precisely that involved in the question whether the officer was to be called adversely, we are satisfied that the earlier objection sufficed to raise the seventy-two-hour statute on this appeal.

This statute (sec. 885.28 (1)), was directed at curing the evils resulting from the practice of obtaining statements from an injured person which might later be used in defending against a lawsuit brought by the injured person. It was believed that use of such statements was unfair because the physical and mental condition of the injured person might prevent him from properly safeguarding his rights. *Zastrow v. Schaumburger* (1932), 210 Wis. 116, 245 N. W. 202, and *Musha v. United States*

*Fidelity & Guaranty Co.* (1960), 10 Wis. 2d 176, 102 N. W. 2d 243.

This court has held, however, that this statute does not apply in cases where the statement was procured by a police officer who was investigating the accident in the course of his official duties. *Hack v. State Farm Mut. Automobile Ins. Co.* (1967), 37 Wis. 2d 1, 154 N. W. 2d 320; *Keplin v. Hardware Mut. Casualty Co.* (1964), 24 Wis. 2d 319, 129 N. W. 2d 321, 130 N. W. 2d 3. The reason for the exception is that the police officer ordinarily has no interest in the outcome of any lawsuit commenced, and therefore, in the light of such indifference of the officer, there is no necessity to protect the injured party. *Musha v. United States Fidelity & Guaranty Co., supra.*

There is no question that sec. 885.28 (1), Stats., covers this case unless the police officer exception is applicable. It is not because Sergeant Traver was the employee of one of the defendants to the lawsuit.

Sergeant Traver was asked by the attorney for the bus company, ". . . what are the duties generally of a special investigator to *distinguish* you from a police officer?" He answered, "Specialized training in serious accidents, injury accidents, any time *city property* is involved . . . categories that a patrolman does not handle." (Emphasis supplied.)

It is clear that in the ordinary case who prevails in a civil lawsuit is of no concern to a police officer. As between the parties, he is completely neutral. This is not true in the instant case where the city, the officer's employer, is a party and the officer is a specialist in making investigations when the city's liability is at issue. While we reaffirm the police-officer exception to the seventy-two-hour statute, in the instant case it is not applicable. For reasons set forth above, the status of Sergeant Traver in this case was little different than that of the ordinary insurance investigator.

In view of our conclusion that the statement taken by the special investigator is not admissible, we need not explore the close question of whether Donna Schueler was in such condition at the time of the statement that she would not be expected to make intelligent and voluntary responses to the questions. We note that the statement of Sergeant Traver that Donna Schueler was coherent and responsive is at odds with the testimony of Edith Schueler, Donna's mother, to the effect that when she first saw Donna immediately after the officer left, Donna was incoherent and was tossing her head from side to side with pain.

### *Did the instructions in regard to right-of-way prejudice the plaintiffs*

The right-of-way instruction attempts to take into consideration the law to be applied under two different fact situations, depending upon whether or not Donna Schueler was outside the crosswalk or within the crosswalk.

It should be stated that the evidence to show that Donna Schueler was outside the crosswalk is indeed difficult to find. There is a serious question whether there was any evidence of record upon which Donna Schueler's presence outside the crosswalk can be based. The attorney for the bus company asserts in his brief that some witnesses testified that the plaintiff was not in the crosswalk. A word-for-word reading of the entire transcript does not reveal a single eyewitness who testified at trial that Donna Schueler was not in the crosswalk.

In a purported attempt to refresh the recollection of a child, thirteen years of age at the time his statement was taken, counsel for the Madison Bus Company asked:

"*Q.* All right. Where were they crossing in reference to the crosswalk?

"*A.* I don't recall anything about where they were.

"*Q.* Referring to your statement, and I am reading, I will show it to you: 'They were not crossing at the cross-walk.'

"*A.* That's what I said at first, but then I—I thought I couldn't really be sure because the ground was—I don't know, the markings weren't real clear. I was—I just couldn't be sure."

The statement referred to was not put in evidence, as indeed it could not be, since it was used ostensibly only in an attempt to refresh recollection. The attempt failed, and the boy ended up thoroughly confusing himself, court, and counsel. His statements were completely non-probative on the question of Donna Schueler's position in the crosswalk and were recognized at the time by the court as being wholly without value in this respect. This was as close as any eyewitness came to claiming that Donna Schueler was not in the crosswalk.

The only other statement was one given by Sergeant Traver, who said:

"From talking to the witnesses, the evidence at the scene, and from talking to Miss Schueler at the hospital, indicated to me that she had not been in the crosswalk."

The answer was given in response to a question asked by counsel for the bus company:

"Were you able to determine in your expertise and from the information you gathered at the scene whether or not Miss Schueler had been in the crosswalk prior, just prior to the impact?"

Objection was not made until after the answer was given. The trial judge ruled that the objection was not timely. We disagree. Although it is clear that:

". . . the judge must be properly informed by a party, who contends that evidence should be rejected, of his contention and the reason therefor. . . . the objection must be made as soon as the ground becomes apparent." McCormick, *Evidence* (hornbook series), p. 115, sec. 52.

In the instant case there was no cause for objection apparent as the result of the question. It was only when the answer was given that it was apparent that the officer was not relying solely on physical evidence at the scene, but was relying on hearsay and a vague assertion in regard to "evidence at the scene." While the jury was instructed to disregard the answer as a conclusion, the trial judge permitted the jury to give credence to it as an "opinion" of the officer, an officer whom the judge had already declared was "independent." Moreover, a portion of his answer was based upon the statement of Donna Schueler given at the hospital, which we have determined was inadmissible as a violation of the seventy-two-hour statute.

We thus conclude that testimonial evidence that Donna Schueler was not in the crosswalk was legally nonexistent.

The trial judge, however, made the assumption that there was evidence upon which a jury could either conclude that Donna Schueler was in the crosswalk or was not. He instructed in regard to the alternatives.

We conclude that the instructions in regard to right-of-way were erroneous. Pedestrian right-of-way at intersections is controlled by statute:

"**346.24 Crossing at uncontrolled intersection or crosswalk.** (1) At an intersection or crosswalk where traffic is not controlled by traffic control signals or by a traffic officer, the operator of a vehicle shall yield the right of way to a pedestrian who is crossing the highway within a marked or unmarked crosswalk.

"(2) No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is difficult for the operator of the vehicle to yield.

"(3) . . . ."

"**346.25 Crossing at place other than crosswalk.** Every pedestrian crossing a roadway at any point other than within a marked or unmarked crosswalk shall yield the right of way to all vehicles upon the roadway."

We conclude that Judge BARDWELL correctly instructed on right-of-way in the event the jury found that Donna Schueler crossed University Avenue other than within the crosswalk: ". . . then it became her duty to yield the right-of-way to the bus." [1]

We conclude, however, the court erred in its instruction in regard to right-of-way in the event the jury found her to be within the crosswalk. The court instructed:

"You are instructed that the Wisconsin statutes define right-of-way as '. . . the privilege of the immediate use of the roadway.'

"The statutes further provide that 'At an intersection or crosswalk where traffic is not controlled by traffic control signals or by a traffic control officer, the operator of a vehicle shall yield the right-of-way to a pedestrian who is crossing the highway within a marked or unmarked crosswalk.'

"The statute further provides that no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is difficult for the operator of the vehicle to yield. Thus, a pedestrian does not have the right-of-way if he suddenly steps from a curb or other place of safety into the path of a vehicle which is so close that it is difficult for the driver to yield.

"If you find that Miss Schueler was crossing the highway at the intersection in question within a marked or unmarked crosswalk, then you must determine further whether she did or did not leave a place of safety and walk into the path of the approaching bus when it was so close that it was difficult for the operator to yield the right-of-way to her. Based on these instructions and all the evidence, you will determine which party, if any, was negligent with respect to right-of-way at the time and place of the accident."

We find error in the last sentence of the instructions. They clearly leave the impression that, if Donna Schue-

[1] While the instruction is technically correct, it is doubtful that there is evidence of record to support a verdict based on the jury's conclusion that Donna Schueler was not in the crosswalk.

ler was found to have suddenly left "a place of safety, etc.," she would be negligent as to right-of-way. This is incorrect. Right-of-way is wholly statutory and cannot be transferred. *Brunette v. Dade* (1964), 25 Wis. 2d 617, 131 N. W. 2d 340. We recently said in *Schoenauer v. Wendinger*, ante, pp. 415, 428, 182 N. W. 2d 441:

"While one having the right-of-way is not relieved from the duty of due care, especially the duty of lookout, there is no authority for the proposition that one loses the right-of-way because of negligent lookout; undoubtedly because lookout is not relevant to right-of-way, whereas speed is. Similarly, a pedestrian having the statutory right-of-way is not relieved of the duty of due care, or of lookout. If a pedestrian is guilty of negligent lookout he does not thereby forfeit his right-of-way, if indeed he has the right-of-way. On the other hand, a pedestrian crossing at an uncontrolled intersection can forfeit his right-of-way by stepping suddenly into the path of an approaching car. However, even in this situation, the right-of-way would not transfer to the motorist. The situation would merely be that neither 'has a right superior to the other.' As to the pedestrian facing a 'Walk' light at a controlled intersection, if he starts to cross the crosswalk while the 'Walk' light is still on, but leaves the curb suddenly stepping into the path of a vehicle at such time as it would be difficult for the motor vehicle operator to yield, the pedestrian does not forfeit his right-of-way."

As in *Schoenauer*, the instruction asks the jury to hold that, under certain circumstances, Donna Schueler was negligent as to right-of-way even though she were within the crosswalk. She could not be negligent in that respect under that state of facts even though there were evidence to bring her within the "place of safety" rule. The instruction was prejudicially erroneous, since it invited the jury to find the plaintiff negligent as to *right-of-way* in addition to lookout—in respect to which there was strong evidence of negligence. Thus, there was an unintended doubling up of the possible negligence on the plaintiff. In addition, it conceivably relieved the jury

of the duty of considering the bus driver's negligence as to right-of-way.

The Model Instruction Wis J I—Civil, Part I, 1255, admirably handles the disposition of the right-of-way question. Instead of the last sentence used herein by the trial court, *supra*, the Model Instruction provides:

"If you find that the pedestrian did so (*walk*) (*run*) then the driver of the automobile did not have a duty to yield the right of way; but if you find that the pedestrian did not so (*walk*) (*run*) then it became the duty of the driver of the automobile to yield the right of way to him."

While we deem the instructions given in this case erroneous, we have said that we would not find prejudicial error in an ultimate fact verdict merely for error in instruction where duplicity is the *sole* objection. In *Merlino v. Mutual Service Casualty Ins. Co.* (1964), 23 Wis. 2d 571, 584, 585, 127 N. W. 2d 741, we said:

"We deem it inadvisable to extend the concept of duplicity to the area of the instructions to the jury. One of the considerations which prompted this court to amend sec. 270.27, Stats., in 1961 under its rule-making power, so as to permit questions in a special verdict to be framed in terms of ultimate fact, was that this would tend to eliminate duplicitous verdicts. Duplicitous verdicts which find overlapping elements of negligence are bad because of their likely effect on the jury in answering the comparative-negligence question. Where a single negligence question framed in terms of ultimate fact is submitted, we deem it unlikely that the jury will segregate particular elements of negligence and assign to each element a certain percentage in answering the comparative-negligence question. Rather we think juries will tend to take an overall view of the negligence of each participant in apportioning percentage of fault. Therefore, even though a trial court instructs on overlapping elements of negligence, this in itself does not constitute error." *See also: Milwaukee Automobile Mut. Ins. Co. v. National Farmers Union Property & Casualty Co.* (1964), 23 Wis. 2d 662, 128 N. W. 2d 12, and *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 149 N. W. 2d 626.

We thus would not find fatal error if duplicity in respect to the plaintiffs were the only flaw. Here, of course, the error probably resulted in improper exoneration of the defendant bus driver in regard to negligence as to right-of-way.

However, the instructions are fatally erroneous in yet another respect. The "place of safety" rule utilized in this portion of the instruction is applicable only to a pedestrian who is crossing in the crosswalk. There is no contention that the plaintiff herein suddenly left the curb. Donna Schueler is alleged to have left an "other place of safety." By "other place of safety," the court could only have meant the area at the east end of the median strip, an area of approximately 20-square feet, a rectangle bounded by the edges of the five-foot crosswalk and the prolongation of the north and south edges of the median strip—a concrete structure four-feet wide. The "place of safety" could not have been the median strip itself, for it was not within the crosswalk. Had Donna Schueler stepped from a point on the median strip not in the crosswalk, she would clearly have not had the right-of-way and the instruction would have been completely inappropriate.

The question thus is simple: Was this 20-square foot rectangle a "place of safety" as contemplated in the statutes? The jury was not instructed as to what a "place of safety" was, and the judge made no finding in that respect. It was, in effect, assumed that, if Donna Schueler had left the area so described, the jury could find that she had left a "place of safety." The question immediately arises: Safety from what? A curb is clearly a "place of safety," for it is out of the possible path of any vehicle on the highway. A duly designated safety zone is also out of the path of vehicular traffic.

Defense counsel refers to the rectangle as a "sanctuary." It is a sanctuary only if it is beyond the reach of ordinary vehicular traffic. Bus company counsel relies upon a quotation from *Jung v. York* (1969), 75 Wash.

2d 195, 199, 449 Pac. 2d 409: "When the statute refers to a 'curb or other place of safety,' it obviously means a place out of the lanes of traffic."

We accept that definition, and it fortifies the interpretation this court has consistently given to the statute.[2] Wisconsin cases have unfailingly found a place to be a "place of safety" only if it was out of the lanes of traffic. *Helleckson v. Loiselle* (1967), 37 Wis. 2d 423, 155 N. W. 2d 45; *Hintz v. Mielke* (1961), 15 Wis. 2d 258, 112 N. W. 2d 720.

The evidence in this case shows that the area claimed to be a "sanctuary" or "place of safety" was exposed to traffic. The rectangular area which is claimed to be a "place of safety" is directly in the lane of traffic turning into the University heating plant. The photographs clearly show the tire tracks tangent to the tapered edge of the median and which cut through the "place of safety." This fact is most clearly revealed in Exhibit 5, which shows tire marks through the rectangle at the east end of the median just to the west of the heating plant entrance. The median to the east of the heating plant entrance, near the end of which the accident occurred, is in the identical relation to westbound traffic turning into the heating plant. Tracks through the alleged "place of safety" at the west end of the median, where the accident apparently occurred, are revealed in Exhibit 14. Exhibit 14 was excluded from evidence, improperly we believe, for it indisputably and clearly showed the topography of the intersection at the time of the accident. Although the picture was taken two days after the accident, there is no doubt that the physical aspects of the intersection were identical to those that existed at the time of the accident.

[2] We do not accept counsel's interpretation of *Menge v. State Farm Mut. Automobile Ins. Co.* (1969), 41 Wis. 2d 578, 164 N. W. 2d 495. The *Menge Case* was not decided by this court on the "place of safety" issue.

Moreover, the record makes clear that this was the busiest intersection on University Avenue—that the pedestrian traffic averaged over 800 per hour, that 1,000,000 pedestrians crossed University Avenue per month, and that 20,000 cars per day traversed University Avenue. Assistant Traffic Engineer Floyd I. Jones testified for the city that midroad safety islands (utilized on University Avenue at an earlier date and much larger than the rectangle in question) were unacceptable as safety zones because they could not accommodate the pedestrian traffic load. Witnesses estimated that, at the time of the accident, there were from 40 to 200 pedestrians in the intersection. It is inconceivable that this tiny space within the crosswalk at the end of the median strip—not large enough for one person to turn with arms extended—could possibly be a "place of safety." It was merely a portion of the crosswalk. It was error to give the instruction in regard to "suddenly leav[ing] a place of safety." There was no "place of safety" for a pedestrian except at the north and south curbs.

We are not persuaded, however, by the plaintiffs' argument that, because Donna Schueler thought the street was for one-way traffic westbound, she had no duty to look to the right. The evidence is quite convincing that Donna Schueler did not know that buses used the narrow lane for eastbound runs. She repeatedly testified to that effect. Her only statement arguably to the contrary was taken by Sergeant Traver contrary to law and was inadmissible. While there was evidence that she had on 12 occasions gone to classes across University Avenue, there was no evidence that a bus was present on any of those occasions. No effort was made by the bus company or the city to show that there were buses in the vicinity at the time Donna Schueler usually went to her 1:20 p. m. class or when she returned (on the occasion of the accident she was in the intersection at 11:55, not her usual class hour). While the jury could

have disbelieved Donna Schueler, if there were any evidence that buses were present on any of the 12 occasions when she had gone to classes across University Avenue, the record is silent in that regard.

A finding that Donna Schueler knew that buses ran east on University Avenue would be completely speculative and contrary to the only evidence of record. This, however, does not obviate her duty to look to the west, and her failure to do so was clearly negligent. It is, however, highly relevant in respect to the causation factor in regard to the negligence of the city in erecting and keeping in place a deceptive one-way traffic sign. There was evidence that Donna Schueler had seen this sign, and she stated that, because of this sign, she thought the street was truly one way. Assistant Traffic Engineer Jones acknowledged that, although the sign was intended for vehicles coming out of Charter Street north of University Avenue, it was not properly placed to serve that purpose. There was clear testimony that anyone looking across University Avenue from the point where Donna Schueler approached the intersection would have seen a sign, almost directly ahead, showing an arrow pointed west and captioned "ONE WAY." Were there evidence that Donna Schueler knew, despite the sign, that the bus traffic traveled in the opposite direction, she could not now contend that the city's clear negligence had deceived her. Under those facts, not found in this case, the city's negligence would not be causal.

The city relies upon a series of cases which hold that a municipality does not incur liability for failure to post signs showing the hazards to persons on public ways. The problem here is not merely the failure to warn. The city's negligence consisted of its unwittingly *deceptive* warning. In *Loehe v. Fox Point* (1948), 253 Wis. 375, 34 N. W. 2d 126, relied upon by the plaintiffs, this court held there was no duty to place signs to warn of what was in plain sight, but in so doing it commented that

the rule was applied in the absence of any "deceptive" conditions. Here, the sign intended for vehicular traffic, itself, deceptively lulled pedestrian traffic. The placing and maintaining of the sign under such conditions was negligence.

It should be noted that Assistant Traffic Engineer Jones acknowledged at the trial that signs specifically warning of bus traffic would result in greater pedestrian safety. Such signs are now in place.

We also note in passing that Judge BARDWELL excluded photographs showing the condition of Donna Schueler's leg after the accident. They were probative of her physical condition and her state of pain and suffering. The photographs were properly identified as a "portrayal of certain facts relevant to the issue" and verified by Dr. Huffer as a correct representation of the facts. *See* McCormick, *Evidence* (hornbook series), p. 387, sec. 181; p. 385, fn. 11, sec. 179; 4 Wigmore, *Evidence* (3d ed.), pp. 251–260, secs. 1157, 1158. Admissibility of photographs was discussed in a recent article in the Wisconsin Law Review, Holz, *A Survey of Rules Governing Medical Proof in Wisconsin,* 1970 Wisconsin Law Rev. 989, 1030. Therein it was stated:

"[Pictures] are to be excluded if the only function is to arouse sympathy or indignation. However, the fact that a picture is gruesome does not necessarily make it inadmissible. . . .

"All that is necessary by way of a foundation is that a witness identify the picture as a fair and accurate representation of the object photographed. The pictures must be of matters not remote in time and there must be a substantial legitimate reason for showing such to the trier of the fact."

Judge BARDWELL pointed out that the pictures were "gruesome" and that much of the probative value of the pictures was merely cumulative to the oral testimony of Dr. Huffer. He therefore concluded that the possible prejudicial effect of the photographs outweighed their

probative value. This constituted a proper exercise of judicial discretion, which must be sustained although reasonable judicial minds could differ. On retrial, however, if the same pictures are offered by the plaintiffs, the question of their admissibility should be re-examined, and the judge at that time should consider anew in light of the circumstances that then exist whether their probativeness is outweighed by the probability of jury prejudice.

Not all the errors we have referred to were properly objected to at trial. Hence, under *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. 2d 380, the plaintiffs cannot raise such alleged errors as a matter of right. However, under sec. 251.09, Stats., this court has the right, in fact the duty, to reverse and order a new trial if, on the basis of the record as a whole, it is in the interest of justice to do so.

Properly tried under the guidelines of this opinion, it would appear that a jury in a new trial of this case could make a different finding of comparative negligence, although it is difficult under the facts of this record to conclude that the plaintiff could be found free of any negligence. We are satisfied that the series of errors cited herein, though each and every one is not individually prejudicial, in the aggregate resulted in prejudice to the plaintiffs. Moreover, testimony of the police officer, which should have been found inadmissible, in regard to Donna Schueler's condition just prior to surgery was probative of certain of the elements of damages in this lawsuit. We conclude that the case should be retried on all issues.

We find no merit in plaintiffs' contentions in regard to Case No. 237. At the time of plaintiffs' motion to set aside the judgment, appeal to this court had been perfected. The case is controlled by our statement in *State ex rel. Freeman Printing Co. v. Luebke* (1967), 36 Wis. 2d 298, 302, 152 N. W. 2d 861, in which this court said:

"The general rule relating to the effect of an appeal on the jurisdiction of the trial and appellate court is that in the absence of a contrary statute an appeal duly perfected divests the trial court of jurisdiction of the subject matter of the appeal and transfers it to the appellate court where it remains until the appellate proceeding terminates and the trial court regains jurisdiction. Annot., 89 A. L. R. 2d 1236."

*By the Court.*—In the interest of justice, the judgment in Case No. 139 is reversed and cause is remanded for a new trial on all issues. The order in Case No. 237 is affirmed.

HALLOWS, C. J. (*concurring*). This case, rather than being a crutch for the nonfault concept in tort liability, is an argument for the doctrine of pure comparative negligence and points up at least two serious weaknesses in our present law. These weaknesses cause the injustice which is dramatically portrayed in this case. First, to recover, a plaintiff must be less guilty of negligence than either of the defendants, the city or the driver of the bus, against whom she seeks recovery. Under the pure comparative negligence concept she would recover 50 percent of her damages. If the law were changed to provide that a plaintiff could recover if he were not more negligent than all the defendants treated as a unit, the plaintiff would also recover one half of her damages of $90,000 and perhaps this appeal would have been avoided. No nonfault plan currently discussed in legal literature would help this case very much because recovery on the basis of no fault is restricted to $10,000.

The plaintiff has been found 50 percent negligent and in justice she should only be denied 50 percent of her damages. Likewise, the city and the bus company were each found 25 percent negligent. Why should not they in justice each pay 25 percent of the plaintiff's damage?

The dissent is firm in its belief the apportionment of negligence is correct and there is no basis as a matter of law to believe a jury could find the plaintiff less negligent on a retrial; therefore, the unjust result must stand. I am more confident of the future and less certain the apportionment of negligence is correct on the facts. In respect to apportionment, I go beyond the majority opinion and add it to the reasons for a new trial.

For the reasons stated in my dissent in *Vincent v. Pabst Brewing Co.* (1970), 47 Wis. 2d 120, 177 N. W. 2d 513, the limited comparative negligence law of this state should be changed to allow a complete comparison of causal negligence and the bar of contributory negligence should be removed or at least the present law should be modified to avoid the injustice this case illustrates.

WILKIE, J. (*concurring*). I concur in the ordered new trial. The tragic result of the allocation of negligence as made in the first trial of this case is the type of result which should propel the legislature to modify the present comparison of negligence statute (sec. 895.045) which bars recovery to these plaintiffs even though Donna Schueler's causal negligence was not greater than the combined negligence of the defendants.

I am authorized to state Mr. Justice BEILFUSS joins in this opinion.

CONNOR T. HANSEN, J. (*dissenting*). The writer respectfully dissents from the decision of the majority of the court. As I read the majority opinion, the conclusion is reached that, although each and every one of the errors therein referred to are not individually prejudicial, the totality of the several errors so infected the proceedings as to prejudicially affect the rights of the plaintiff. Hence, a new trial is granted in the interest of justice pursuant to the provisions of sec. 251.09, Stats.

It is my understanding that the rule is as follows: "It is well settled that this court will not exercise its discretion under sec. 251.09, Stats., to order a new trial in the interest of justice unless it has been convinced that there has been a probable miscarriage of justice, viewing the case as a whole." *Willenkamp v. Keeshin Transport System, Inc.* (1964), 23 Wis. 2d 523, 531, 127 N. W. 2d 804.

It is not a question of whether the plaintiff has been prejudiced, and it is not necessary to again review the facts of the accident. Unfortunately, individuals and families are sometimes subjected to tragic accidents for which they receive little or no monetary compensation. I would concur with the dissent of Mr. Justice ROBERT W. HANSEN and conclude that under the facts of this case there has not been a probable miscarriage of justice.

Also, I consider the provisions of sec. 274.37, Stats., to be of significance:

"**274.37 Judgments; application to reverse or set aside; new trial; reversible errors.** No judgment shall be reversed or set aside or new trial granted in any action or proceeding, civil or criminal, on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure the new trial." [1]

It is my judgment that none of the errors referred to in the majority opinion, either individually or collective-

---

[1] "Interpretive commentary

"This section was created by Laws 1909, c. 192. Its form has never been changed.

"This section should be considered in connection with Stats., sections 251.09 as to discretionary reversal by the supreme court and 269.43 as to judgments not being reversed or affected by errors or defects not affecting substantial rights of the adverse party." West's, Wis. Stats. Annot., sec. 274.37, p. 514.

ly, has affected a substantial right of the plaintiff. Considering the facts in the light most favorable to the plaintiff, in the writer's judgment, a jury verdict finding the plaintiff less negligent than either the city or the bus driver could not be sustained. I would affirm the judgment of the trial court in case number 139 and concur with the majority opinion in case number 237.

ROBERT W. HANSEN, J. (*dissenting*—Case No. 139). Here the plaintiff walked into the side of a passing bus that was moving, well within the speed limit permitted, in a curbside lane of traffic reserved for bus travel. Under the "nonfault" concept, she would be entitled to reimbursement for expenses and compensation on a schedule basis for her injury, all without regard to her fault or negligence in causing the accident. Such social insurance approach, disregarding the fault of the injured person, is the law in Wisconsin, under the Workmen's Compensation Act, for employees injured in work-connected accidents. However, it is not the law,[1] at least not yet, as to injuries resulting from highway accidents.

Under the law as it is, the plaintiff must base her claim for damages on the negligence or fault of others involved in the accident. Here she alleged negligence on the part of the bus driver and the city. Under the statute then applicable, she was required, to recover, to establish that her negligence was less than that of the driver or city. The jury found her 50 percent negligent, the bus driver 25 percent negligent, and the city 25 percent negligent.

The court majority reverses and orders a new trial. It does not do so on the basis of reversible error, finding no such claims of error preserved by proper objection at the time of trial. It reverses "in the interest of jus-

---

[1] The Wisconsin legislature has established a comparative negligence formula applicable to automobile accident cases (Sec. 895.045, Stats.) and its right to do so has been upheld. *Vincent v. Pabst Brewing Co.* (1970), 47 Wis. 2d 120, 177 N. W. 2d 513.

tice," a basis requiring a finding that a different result would probably be reached at a new trial. *Landrey v. United Services Automobile Asso.*, ante, pp. 150, 160, 181 N. W. 2d 407. Is there any basis here for believing that a jury would or could find the plaintiff less negligent than the driver or less negligent than the city? While the heart says Yes, the mind says No. Under any view of the evidence, as a matter of law, the plaintiff's causal negligence was greater than that of the driver or of the city.

As to the bus driver, the claim of negligence relates to lookout. But this is not a case of a bus hitting a pedestrian who moved into its path. The plaintiff walked into the side of the bus when it was right in front of her. In fact, she walked into the rear half of the bus. The bus was being driven along a broad avenue that flanks a university campus. Granted that he was driving in a single lane reserved for bus and taxicab traffic, the driver was required to give constant attention to the road in front of him. Can he also be required to give attention to persons the front of the bus has passed and to anticipate that one such person might step from a sidewalk or safety island into the rear end of his bus? If so, can it be held that any such breach of duty as to an all-encompassing lookout was greater in degree than the negligence of the person who walked without looking or seeing, into the rear side of the vehicle? The question suggests, in fact, gives the answer.

As to the city, the claim of fault is based upon a near-by sign, indicating that traffic was one-way, which was true as to automobile traffic, but did not mention that a special lane of traffic was reserved for buses and taxicabs traveling in the opposite direction. It is undisputed that the plaintiff, a student at the university, had crossed the street in question at least twenty-four times. It is difficult to believe that she had not at any time observed a bus or taxicab operating in the lane. Even if this were the case, even if she relied upon the sign, it is

obvious that her negligence is independent of and greater than that of the city in posting the sign. If the plaintiff had stepped in front of the moving bus, it could be argued that the "one-way" sign led her to look only in the wrong direction and excuse her from looking in any other direction before proceeding. Where she in fact stepped off the curb or island into the rear side of the bus, it is her failure to look ahead that is the lookout failure on her part that is causally most important. The direction in which the bus was moving cannot change, much less eliminate, the responsibility of a pedestrian to look ahead before stepping into the side of a moving vehicle directly in front of him. As a matter of law, we would hold that the negligence of walking into a vehicle is greater than the negligence of the municipality that posted a sign indicating vehicular traffic moved in one direction only.

It is sad to see the serious consequences of a moment of forgetfulness or thoughtlessness or carelessness on the part of the plaintiff. It is exactly against such tragic consequences that the victims of industrial accidents are completely insured. But for as long as the law in this state requires, as it did here, that the negligence of the person injured be causally less than the negligence that can be attributed to the other persons complained against, the plaintiff cannot prevail. The law as it is applied to the facts as they clearly are requires affirmance.