Argued April 6, affirmed June 16, 1971

PLASKER, *Appellant, v.* FAZIO, *Respondent.*
485 P2d 1075

Don Sanders, Judge.

*Francis F. Yunker,* Portland, argued the cause and filed briefs for appellant.

*Wm. L. Hallmark,* Portland, argued the cause for respondent. With him on the brief were McMenamin, Jones, Joseph & Lang.

Before McAllister, Presiding Justice, and Denecke, Holman, Tongue, Howell, and Bryson, Justices.

McALLISTER, J.

While plaintiff was crossing the street in a marked crosswalk he was struck by defendant's car. The jury, nevertheless, found for defendant and plaintiff appeals, alleging that the court erred in instructing the jury. We affirm.

There was evidence from which the jury could have found the following facts about which there is little dispute. 42nd Avenue in Portland runs north and south and is 36 feet wide. Emerson Street intersects 42nd from the east, forming a "T" intersection. Plaintiff was crossing 42nd from west to east on the north side of Emerson. Defendant was driving north on 42nd and the front of his car struck plaintiff when plaintiff was in the crosswalk. Both plaintiff and

defendant, as well as the eye witnesses, were on their way to mass at a church on the northeast corner of the intersection.

The witnesses, including plaintiff, fixed the speed of defendant's car at about 30 miles per hour, which was the indicated speed for that area. The defendant admitted that as he approached and entered the intersection he was looking to his right for a place to park on Emerson. When he looked again to the front plaintiff was directly in front of him and it was too late to stop or swerve. Defendant's car skidded about eight feet before the impact and about seven feet thereafter.

Plaintiff testified that when he started to cross the street he saw defendant's car about 250 feet to the south. He further testified that when he was "right about in the center line" he saw defendant's car about 40 feet away and that the car was "coming about 30 miles an hour." Plaintiff continued and was struck by the front bumper of defendant's car at a point which, according to the traffic investigator, was about six feet east of the center line of 42nd.

Plaintiff assigns as error the giving of the following right of way instruction:

"The plaintiff alleges the defendant negligent in failing to yield the right of way. Under the statutory law of the State, there is provided rights of way under certain circumstances. The particular statute applicable in this case in part and insofar as pertinent to the case reads:

" 'When traffic control signals, if any, are not in operation a driver of a motor vehicle shall stop and yield the right of way to a pedestrian crossing the roadway within any marked crosswalk if the pedestrian is on the half of the roadway on and

along which the vehicle is traveling or is approaching such half from the other half of the roadway so closely as to be endangered.

" 'But in proceeding to cross or in crossing the roadway, the pedestrian shall not leave a curb or other place of safety suddenly and move into the path of a vehicle which is so close that it is impossible for the driver to yield.'

"Now, this section also provides that it does not relieve the driver of a vehicle or a pedestrian from the duty to exercise due care.

"I need to define somewhat the term 'right of way.' Right of way probably is more accurately expressed as the privilege of way, the privilege of immediate use of that portion of the highway in question, and by that we mean that a right of way is not absolute. It may not be exercised arbitrarily or unreasonably. It must be exercised at all times reasonably; and whenever danger to yourself or others is anticipated, due care and caution must be observed to prevent injury.

"In this sense, if a right of way is exercised arbitrarily or unreasonably, then the right of way does not exist. It is forfeited. Not that the other party gets it, but simply the party who would have had it, had he not exercised it unreasonably or arbitrarily, would have had a right of way.

"So it is a question of fact for you to determine as you find those circumstances to be and circumstances are all questions of fact for you to determine. If this plaintiff had a right of way under those circumstances and if he exercised it reasonably and not arbitrarily, and in this exercise of it the defendant failed to yield—and if those are the facts—then you would find the defendant negligent in this particular.

"Contrarywise, you would not find the defendant negligent in this particular."

Plaintiff excepted to the foregoing instruction in the following language:

"MR. YUNKER: Plaintiff further takes exception to the giving of the instruction submitting question of statutory right of way to the jury for the reason that it is the contention of the plaintiff that the right of way of—that the evidence shows that the statutory right of way belonged to the plaintiff and was not or could not be forfeited.

"THE COURT: I understand.

"MR. YUNKER: And the plaintiff further takes exception to the giving of instructions that the right of way to the pedestrian in the crosswalk could not be arbitrarily or unreasonably used for the reason that it is our contention that the statutory right of way for marked crosswalks belongs to the plaintiff and that the instruction given as to the arbitrary or unreasonable use thereof refers to the right of way of motor vehicles."

As we read plaintiff's exceptions he was contending that "the statutory right of way belonged to the plaintiff" and that the court erred in "submitting the question of statutory right of way to the jury." In the second paragraph of his exceptions plaintiff repeated that "the statutory right of way for marked crosswalks belongs to the plaintiff" and objected to the instruction that the pedestrian may not use his right of way "arbitrarily or unreasonably", contending that such limitation applied only to motor vehicles.

In this court plaintiff, without abandoning his contention that his right of way was absolute, has shifted his main attack to that portion of the instruction which advised the jury that a pedestrian forfeits his right of way if he exercises it arbitrarily or unreasonably.

Although we doubt that plaintiff's exceptions embraced his present contention, we will consider, nevertheless, whether the court erred in advising the jury that plaintiff forfeited his right of way if he exercised it arbitrarily or unreasonably and, if the court erred, whether the error was prejudicial.

When Oregon in 1931 enacted the Uniform Act Regulating Traffic on Highways it provided in mandatory terms that "[t]he driver of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk * * *." The only qualification was contained in the provision that the right of way did not relieve the pedestrian from the duty to exercise due care.[1] Most of the cases cited by plaintiff were decided under the 1931 version of the statute and are not helpful in this case. It is sufficient to note that under the 1931 statute the pedestrian's right of way protected him from curb to curb.

A major change in the pedestrian's right of way statute was made in 1941 when the legislature adopted the language of what is now Section 11-502 (a) and (b) of the Uniform Vehicle Code, which read in pertinent part as follows:

"2. * * * a driver of a vehicle shall yield the right of way * * * to a pedestrian crossing the roadway within any marked crosswalk * * * when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedes-

---

[1] Oregon Laws 1931, ch 360:
"Section 38. (a) The driver of any vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk * * *.

* * * * *

"(d) The provisions of this section shall not relieve the driver of a vehicle or the pedestrian from the duty to exercise due care."

trian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall leave a curb or other place of safety suddenly and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield." OL 1941, ch 428, § 8.

It will be noted that the 1941 version drastically qualified the pedestrian's right of way in two respects. The duty of the driver to yield the right of way to pedestrians was limited to those pedestrians who were upon the half of the roadway upon which the vehicle was traveling or were approaching so closely from the opposite half of the roadway as to be in danger. The other change imposed a mandatory duty upon a pedestrian not to "leave a curb or other place of safety suddenly and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

The duty of the driver as expressed in the 1941 version has been carried forward with only minor editorial changes to the current statute. On the other hand, the language prescribing the duty of pedestrians was further revised in 1947.

In 1947 the legislature rejected an effort to restore the pedestrian's curb-to-curb right of way.[9] Instead, the pedestrian's duty "not to leave a curb or other place of safety suddenly and walk or run into the path of a vehicle" was made applicable not only when the pedestrian proceeded to cross the roadway, but also

---

[9] House Bill 257, Forty-fourth Legislative Assembly, Regular Session. The bill in its original form would have restored the pedestrian's 1931 curb-to-curb right of way. As amended before passage the original purpose of the bill was eliminated and the pedestrian's right of way further qualified as we have mentioned in the text. OL 1947, ch 407.

when the pedestrian was crossing the roadway. In the same amendment the word "move" was substituted for the 1941 words "walk or run."

Editorial changes were made in 1953 which did not affect the substantive rights or duties of either driver or pedestrian. The statute is now codified in ORS 483.210 and reads in pertinent part as follows:

"(1) When traffic control signals, if any, are not in operation, a driver of a vehicle shall stop and yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, if the pedestrian is on the half of the roadway on and along which the vehicle is traveling or is approaching such half from the other half of the roadway so closely as to be in danger; but in proceeding to cross, or in crossing, the roadway the pedestrian shall not leave a curb or other place of safety suddenly and move into the path of a vehicle which is so close that it is impossible for the driver to yield.

\* \* \* \* \*

"(5) This section does not relieve the driver of a vehicle or a pedestrian from the duty to exercise due care."

It is important to note the distinct but reciprocal duties imposed by the statute upon the driver and pedestrian. The driver must yield only to those pedestrians who are on the half of the roadway on and along which the vehicle is traveling or are approaching such half from the other half of the roadway so close as to be in danger.

The provision crucial to this case prohibits the pedestrian from leaving a curb or other place of safety suddenly and moving "into the path of a vehicle which is so close that it is impossible for the driver to yield."

This mandatory prohibition is applicable to the pedestrian not only when he is "proceeding to cross," but also while he is "crossing" the roadway.

1. Some jurisdictions have interpreted the term "other places of safety" in Section 11-502 (b), Uniform Vehicle Code, to include only places like curbs, such as safety islands, entirely outside the traffic area.[9] In view of the legislative history of our statute we think the words "other place of safety" must be given a broader meaning to include positions of relative safety, such as the center line area of the roadway. Otherwise imposition of a continuing duty on the pedestrian while he is "crossing" the roadway would have no significance.

We think the legislature clearly intended that a pedestrian who leaves a place of safety in the center of the street and moves into the path of a vehicle observed by him to be approaching so closely that it is impossible for the driver to yield does not have any right of way over the vehicle. On the contrary, it is the mandatory duty of the pedestrian to yield to a vehicle approaching under the circumstances described in the last clause of paragraph (1).

2. We think the word "suddenly" as used in the statute modifies the word "leave," and that the word "move" is intended to embrace the words "walk or run," which it replaced. "Suddenly" is a word in common usage and is not used in the statute in any technical sense. The definitions of "sudden" in Webster's New

---

[9] Brazington v. Plankerton, 249 Minn 459, 82 NW2d 620, 623 (1957); Jung v. York, 75 Wash 2d 195, 449 P2d 409, 412 (1969); Schueler v. City of Madison, 49 Wis 2d 695, 183 NW2d 116, 128 (1971).

International Dictionary of the English Language (2d ed Unabridged) include the following:

"1. Happening without previous notice or with very brief notice; coming or occurring unexpectedly; unforeseen; unprepared for * * *."

We think the word is used in ORS 483.210 (1) to mean unexpectedly. The pedestrian has a right to expect a driver who can stop and yield to do so. On the other hand, the driver has a right to expect that a pedestrian will not move in front of his vehicle when the driver obviously cannot stop. This interpretation of the statute is in accord with paragraph (5), quoted above, which imposes on both the driver and the pedestrian a continuing duty to exercise due care.

There was evidence in this case, including plaintiff's testimony, from which the jury could have found, and apparently did find, that the plaintiff moved from a place of safety in the center of 42nd into the path of a vehicle which was then only 40 feet away and traveling at 30 miles an hour.

We think it was inadvisable for the court to elaborate on the plain wording of the statute, but we also think that it was not inaccurate to say that a pedestrian who moves into the path of a dangerously close vehicle from a place of safety as proscribed by the statute has forfeited his right of way. If plaintiff had the right of way when he started to cross the intersection and did not have it when he moved into the path of defendant's vehicle, what happened to the right of way? In common parlance it would be said that the plaintiff had lost his right of way—and lose is a common synonym for forfeit.

3. The negligence of defendant was conceded. This

case turned on the simple question of whether plaintiff had a right to move into the path of defendant's vehicle or whether he should have waited at the center of 42nd until defendant's vehicle passed. The court summarized his right of way instructions in the following language:

"So it is a question of fact for you to determine as you find those circumstances to be and circumstances are all questions of fact for you to determine. If this plaintiff had a right of way under those circumstances and if he exercised it reasonably and not arbitrarily, and in this exercise of it the defendant failed to yield—and if those are the facts—then you would find the defendant negligent in this particular."

We think the instruction as a whole fairly submitted the crucial question to the jury and that the jury was not confused about the relative rights of the two parties. Although, as indicated, we think the instruction was more prolix than necessary, we think plaintiff was not prejudiced thereby.

We have examined the other assignments of error, which, in the main, reiterate plaintiff's contention that he was entitled to have the jury instructed that "defendant failed to yield the right of way to the plaintiff at the time and place of the accident." We find no merit in these other assignments of error and think no additional comment about them is necessary.

The judgment is affirmed.